582 S.W.2d 347 (1979)
CARTER COUNTY SCHOOL DISTRICT, R-1, Plaintiff-Respondent,
v.
Joe Wayne PALMER, Defendant-Appellant.
No. 10957.
Missouri Court of Appeals, Southern District, Division Three.
May 11, 1979.
Motion for Rehearing or Transfer Denied May 30, 1979.
Application to Transfer Denied July 17, 1979.
*348 L. Dwayne Hackworth, Piedmont, for plaintiff-respondent.
David G. Neal, Eminence, for defendant-appellant.
BILLINGS, Judge.
The Carter County School District, R-1, Board of Education terminated the indefinite teacher's contract of Joe Palmer. The Circuit Court of Carter County affirmed the action of the school board, finding five charges levelled against the teacher were supported by substantial and competent evidence. We reverse and remand.
The reason for the termination, as reported in the board's written findings and decision, was "Joe W. Palmer's wilfull [sic] and persistent violation of and failure to obey the published regulations of the Board of Education of the Carter County School District R-1." The grounds for termination of an indefinite contract with a permanent teacher are found in § 168.114 RSMo 1969, which reads in pertinent part: "An indefinite contract with a permanent teacher shall not be terminated by the board of education of a school district except for one or more of the following causes: . . . (4) Willful or persistent violation of, or failure to obey, the school laws of the state or the published regulations of the board of education of the school district employing him . . . ." We find that the termination of Mr. Palmer's contract was not in conformity with the terms of § 168.114.
Twenty-four charges were brought against Mr. Palmer by the board. The incidents alleged in fourteen of the charges occurred before the regulations of the board of education were published, and for that reason were not considered as bases for the termination. Further, it was found in the circuit court that five other charges were not supported by substantial and competent evidence, but that Charges 10, 13, 16, 18, and 21 were supported by substantial and competent evidence. Thus our review is limited to an examination of whether or not Charges 10, 13, 16, 18, and 21 can properly serve as bases for termination.
Charge 13 accuses appellant of distracting the class of a fellow teacher, but no reference is made to any regulation which might have been contravened by appellant's conduct. The board of education rested its decision to terminate appellant's contract on the finding that ". . . Joe W. Palmer has failed and refused over a period of time to be in compliance with the published school board policies and regulations . . . as specifically set out in 5205, 5210, 5229, and 5710 . . . ." We can discover nothing in these four regulations,[1] the only *349 foundation for the board's action, which appellant could have violated or failed to obey by the conduct alleged. It follows that Charge 13 was an invalid ground of termination.
Charges 18 and 21 describe incidents in which the conduct of appellant is said to be contrary to section 5710 of the published regulations of the board. The statute which must be followed in the termination of an indefinite contract, § 168.114, requires a violation of, or failure to obey, published regulations. Regulation 5710 is descriptive and recommendatory, not prohibitory that one might violate it, nor mandatory that one might fail to obey it. The only phrase which is directive in any way does not apply to this case. We hold that the statute does not allow termination on the basis of a regulation which neither forbids nor commands action, for one cannot violate nor fail to obey such a regulation.
Two charges, Charges 10 and 16, remain as possible bases for the termination of appellant's contract as affirmed by the circuit court. Again, we must adhere to the statute in our scrutiny of each charge as a ground of termination. Mr. Palmer is said, in Charge 10, to have treated certain students in an unkindly and unjust manner and with partiality on one described occasion, in disregard of Regulation 5205. Charge 16 also refers to only one day and one topic of discussion; the appellant's behavior in confrontations with the principal that day was said to be contrary to Regulation 5229. Each charge relates to a single instance of violation or failure to obey different published regulations. A single act of disobedience to, or violation of, a published regulation does not constitute persistent disregard thereof, Oakdale Union School District v. Seaman, 28 Cal.App.3d 77, 104 Cal.Rptr. 64, 527 (Ct.App.1972), as required by § 168.114, subd. 1(4). We are led to conclude then, that if either Charge 10 or Charge 16 is to support the termination, it cannot be because either was a persistent violation of, or failure to obey, a regulation; rather, only if there is substantial and competent evidence from which the board could have found a willful violation of, or failure to obey, published regulations, may the termination be permitted to stand.
To determine whether or not evidence of a willful violation is present in this case, we must first decide what meaning the legislature intended the word "willful" to have. Is it enough in the Teacher Tenure Act that the offender intends to act, and the action taken happens to be inconsistent with a regulation, or must he or she act with the intention of violating or failing to obey a regulation? The first of these interpretations merely involves one intention, viz. to act in the absence of reflex or coercion; the second involves two intentions, viz. one to act and one to violate or disobey. We believe the latter interpretation provides the meaning intended by the legislature.
"[O]ne of the commonplace rules of statutory construction is that some significance and effect must be given every word, phrase, sentence and part [of a statute], if possible." (Citations omitted). Ross v. Conco Quarry, Inc., 543 S.W.2d 568, 575 (Mo.App.1976). It seems to us that if the statute were construed to allow termination for one volitional act done without the purpose of disobeying or violating a regulation, such construction would cause another provision of the statute, namely persistent disregard of a regulation, to become redundant and to lose its "significance and effect." If one act, not motivated by intentional disregard of a regulation, had been considered sufficient for termination, the provision for termination for persistent, i. e. *350 continuing or repeated, activity of the same kind would be superfluous. Unless it was the appellant's purpose to violate or disobey Regulation 5205 or 5229 by his conduct, his contract cannot be terminated for willful violation or failure to obey those regulations.
With the definition of "willful" in mind, we take up the final question: Was there substantial and competent evidence on either Charge 10 or Charge 16 to sustain the board's finding that appellant had willfully violated or failed to obey the board's published regulations? Our review of this administrative decision is limited. We may only examine the board's decision to ascertain whether or not it is supported by competent and substantial evidence on the whole record, viewing the evidence and all reasonable inferences arising therefrom in a light most favorable to the board's decision. Harrod v. Board of Education, City of St. Louis, 500 S.W.2d 1 (Mo.App.1973); Board of Education, Mt. Vernon Schools, Mt. Vernon v. Shank, 542 S.W.2d 779 (Mo. banc 1976).
We recognize that willfulness can seldom be directly proved. State v. Adams, 532 S.W.2d 524 (Mo.App.1976). But in this case there was no evidence at all that appellant had ever read or had any knowledge of the regulations he is charged with having willfully disregarded. Much less is there any indication in the record that appellant acted with the intention to violate or fail to obey any regulation. In this respect, the case at bar differs greatly from the Shank case, supra, where there was direct evidence that the teacher was aware of the particular regulation involved, and it could reasonably have been inferred from Mrs. Shank's own statement and the fact that she received prior warnings, that she struck students in defiance of, and with the intention to violate, the corporal punishment regulation. No evidence appears in the case before us which would permit even an inference of an attitude or willfulness on the part of Mr. Palmer similar to Mrs. Shank's. There is no evidence of Mr. Palmer's willful violation of, or failure to obey, a published regulation.
For the foregoing reasons, we hold that appellant's employment was terminated without satisfaction of the statutory requirements. We therefore reverse and remand this case to the circuit court with directions to enter judgment in accordance with §§ 168.116, subd. 4 and 168.120, subd. 4, RSMo 1969, reinstating appellant to the status of a permanent teacher and ordering that he receive compensation for the period of the pendency of his appeal, subject to the doctrine of mitigation, Bishop v. Board of Ed. of Francis Howell Sch. Dist., St. Charles, 575 S.W.2d 827 (Mo.App.1978); Pollard v. Board of Ed. Reorg. Sch. Dist. No. III, Platte County, 533 S.W.2d 667 (Mo.App.1976), as that doctrine is set forth in Wolf v. Missouri State Training School for Boys, 517 S.W.2d 138 (Mo. banc 1974).
FLANIGAN, C. J., and MAUS and GREENE, JJ., concur.
NOTES
[1] 5205.

The teacher shall deal kindly and justly with every child as an individual without prejudice or partiality.
5210
The teacher should respect the confidence of the pupil; information given in confidence should be passed only to authorized persons or agencies that are attempting to aid the pupil.
5229
The teacher should maintain an attitude and personal appearance which strengthens public respect for the teaching position and for the school system.
5710
Classroom teachers are under the direct supervision of the building principal. The administrative policies communicated from the Board of Education, assignment of daily work, instructional schedules, and courses of study will reach the classroom teachers through the principal. All problems and requests of the teachers for assistance, for materials, or information pertaining to school work should be directed to the principal. A teacher may expect the principal to guide and assist him with problems pertaining to his work with the pupils. He may expect the principal to share his disciplinary problems, and to guide and sustain him as they work together for the good of the children. Either or both may seek the advice of the Superintendent of the Schools or other school personnel on specific problems or on interpretation of policy.