Maurice BELL, Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF the CITY OF ST. LOUIS, Defendant-Respondent.

No. 50392.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 17, 1986.

John A. Turcotte, Jr., St. Louis, for plaintiff-appellant.

Kenneth C. Brostron, St. Louis, for defendant-respondent.

PUDLOWSKI, Judge.

Appellant, Maurice Bell, appeals from the judgment of the Circuit Court of St. Louis County affirming the decision of the Board of Education of St. Louis City. The Board's decision, dated December 5, 1984, suspended the appellant without pay from that date until the end of the 1984–85 school year. The appellant's suspension was the result of the drowning of a sixth grade student during a field trip. We affirm.

During the 1983–84 school year, the appellant was employed by the Board of Education as the principal of Clinton Middle School. On April 3, 1984, Mrs. Mona Kozlen, a sixth grade teacher at the school, met with the appellant to discuss a proposed field trip to Meramec Caverns on May 18, 1984. At this meeting, Mrs. Kozlen told the appellant about an earlier trip to the caverns with her grandchildren

where she permitted the children into the Meramec River. Mrs. Kozlen also showed the appellant a brochure about the caverns which displayed water activity on the river. He responded by stating, "On this field trip, no water."

When the appellant became the principal of Clinton Middle School, he implemented the use of a blanket permission form for field trips. The former procedure involved permission forms sent home to the parents for each and every trip. The appellant testified that the blanket form was only the first stage of his new procedure. He stated that there was a second stage which consisted of a form containing specific field trip information with a tear-off consent slip-to be signed by parents and returned to the school before each trip. No such parental permission was obtained for the trip scheduled to Meramec Caverns on May 18, 1984. Mrs. Turley, team leader for the sixth grade teachers, testified that the appellant never told her that she needed a specific field trip permission form.

On May 11, 1984, seventh graders from Clinton went on a field trip to Meramec Caverns. Their teachers permitted them to enter the Meramec River. Several students returned to the school with their clothes wet; others with their makeup running. Polaroid photographs of the students in the river were seen by students, teachers, the appellant's administrative assistant, and the appellant. When Mrs. Sylvia Small, a seventh grade teacher showed the pictures to the appellant, he asked her if she had taken her students swimming. Mrs. Regina Wells, another seventh grade teacher, testified that she also had seen the appellant looking at the photographs and that he had asked if the students were allowed to go swimming.

Following the May 11, 1984, field trip, news that the seventh graders had been allowed in the river circulated among the faculty and sixth graders of Clinton Middle School. Mrs. Kozlen told her sixth grade class that they could bring swimming clothes and go in the river. Mrs. Constance Westbrook took a poll of her students to determine which of them could swim after one of her pupils brought a raft to school the day before the field trip.

On May 18, 1984, the sixth grade students boarded two buses. Mrs. Turley testified that there was a beige and red inflated raft visible from the rear of one of the buses. The appellant testified that it was a well-established procedure for him to check the buses before they left and, if he was unable, he would designate his assistant to do so. On May 18, 1984, however, the appellant did not inspect the buses. He was drawn away to look for a sixth grade girl who had failed to board one of the buses. Before he could return and without his permission, the buses departed.

During the field trip, the students were allowed in the Meramec River. One student drowned. On May 31, 1984, following an investigation, the superintendent of schools notified the appellant of the charges pending against him before the Board of Education. He was charged with violating Board of Education Regulation No. 2740 in that he "failed to take reasonable precautionary measures to prevent an accident ... that would endanger the health, safety and welfare of students in connection with a field trip to Meramec Caverns by sixth grade students on May 18, 1984." He was also charged with violating Board Regulation No. 6218 in that he "failed to secure parental permission for the field trip...."

Following a hearing before a three-member panel of the Board of Education, the Board issued its findings of fact, conclusions of law, and decision on December 5, 1984. The Board concluded that the appellant had violated Regulations No. 2740 and No. 6218 and suspended him without pay until the end of the 1984–85 school year.[1]

---

1. The Board's specific conclusions are as follows:

   E. It is the conclusion of the Board that Maurice Bell failed to take reasonable precau-

tionary measures to prevent an accident or incident that would endanger the health, safety, and welfare of students in connection with a field trip to Meramec Caverns by sixth grade students

Thereafter, the appellant petitioned the Circuit Court of St. Louis County to review the Board's decision. On June 5, 1985, the circuit court affirmed the Board's decision. This appeal followed.

The appellant raises four issues on appeal. He contends the trial court erroneously affirmed the Board of Education's decision because: (1) Board Regulations No. 2740 and No. 6218 are unconstitutionally vague; (2) the Board failed to follow the procedures prescribed by § 168.221, RSMo 1978; (3) the Board's findings of fact and conclusions of law were not supported by competent and substantial evidence on the whole record; and (4) the Board's decision was arbitrary, capricious, unreasonable, and an abuse of discretion.

■ The appellant first challenges the Board's decision on the ground that Regulations No. 2740 and No. 6218 are unconstitutionally vague. In our review of a regulation for vagueness, we cannot hold the regulation unconstitutional if it is susceptible to any reasonable construction supporting its constitutionality. *St. Louis Board of Education v. Shannon*, 640 S.W.2d 121, 122 (Mo. banc 1982). So long as the terms or words used in the regulation are of common usage and are understandable by persons of ordinary intelligence, the regulation satisfies the constitutional requirement of definiteness and certainty. *Prokopf v. Whaley*, 592 S.W.2d 819, 824 (Mo. banc 1980).

■ Guided by the above rules, we first consider Board Regulation No. 2740. Regulation No. 2740 provides in part:

The principal shall take reasonable precautionary measures to prevent accidents ... and incidents that endanger the health, safety, and welfare of the students....

The appellant contends this regulation is defectively vague because it failed to notify the appellant as to which acts were required of him. He argues that until the Board issued its decision in the case, the appellant was left to guess what "reasonable precautionary measures" might entail. We disagree.

Although the phrase "reasonable precautionary measures" in Regulation No. 2740 is imprecise by its very nature, the regulation is not fatally vague. Inherent in the appellant's employment agreement was his promise to use his best judgment in the management of his school's affairs. Because a principal, as an administrator, possesses discretionary authority, it was expected that the appellant would exercise common sense in determining what "reasonable precautionary measures" would be necessary in a given situation. Indeed, the term "reasonable," as used in Regulation No. 2740, is often used as the guiding standard for conduct in statutory and case law and cannot be considered vague in the present case. *Aubuchon v. Gasconade*

on May 18, 1984. Although Mr. Bell told one of the five teachers who participated in the trip that students were not to get into the water, Mr. Bell did not tell other teachers nor did he conduct follow-up measures to insure that this directive was carried out. Mr. Bell failed to secure specific parental permission for the field trip to Meramec Caverns on May 18, 1984. Mr. Bell authorized use of a "blanket approval" in September, 1983, and failed to secure specific parental permission for students to enter the Meramec River on May 18, 1984. Mr. Bell did not inspect the buses which transported the sixth grade students on the field trip nor did he provide supervision for the loading or departure of the buses from the school. Had Mr. Bell done so, he would have observed that at least one student had an inflated raft. During the field trip on May 18, 1984 some students entered the water and one student subsequently drowned. It is the conclusion of the Board that Mr. Bell's violation of Regulation 2740 is sufficiently serious standing alone to warrant his suspension without pay immediately and until the end of the second semester of the 1984–1985 academic year.

F. It is the conclusion of the Board that Maurice Bell failed to secure specific parental permission for the field trip to Meramec Caverns on May 18, 1984. Mr. Bell authorized use of a "blanket approval" in September, 1983, and failed to secure specific parental permission for students to enter the Meramec River on May 18, 1984. Mr. Bell acted contrary to Regulation 6218. It is the conclusion of the Board that Mr. Bell's violation of Regulation 6218 is sufficiently serious standing alone to warrant his suspension without pay immediately and until the end of the second semester of the 1984–1985 academic year.

*County R–1 School District,* 541 S.W.2d 322, 325 (Mo.App.1976). Moreover, such a standard provides the flexibility and discretion the Board of Education requires to handle the complexities and problems which arise in a large metropolitan school district. *Id.; School District of Kansas City v. Clymer,* 554 S.W.2d 483, 487 (Mo. App.1977).

█ We next consider Regulation No. 6218 which provides in part that "[w]ritten consent of the parents must be secured by the teacher or other school official." The appellant contests this regulation as impermissibly vague because it does not state the type of written permission which must be obtained. He also argues that it is unreasonable to require the principal of a school to obtain parental consent where the regulation on its face does not require any act by the principal to obtain it. We disagree.

The second paragraph of Regulation No. 6118 provides the following:

If the trip requires transportation or requires taking students outside of the local district, the principal shall submit a written request to the Area Superintendent at least a week in advance. Each request should specify the purpose of the trip, the date, time of day, place and the mode of transportation. If transportation is required, school buses conforming to the requirements of sections 309.050 and 309.060 R.S.Mo. must be used except in cases involving other transportation as specifically included in the Board of Education policy guidelines applicable to liability coverage (See Regulation 2050). Written consent of the parents must be secured by the teacher or other school official. The teacher or other school official should use reasonable care to look out for the safety of students during the trip.

Although Regulation No. 6218 does not expressly require the appellant, as principal of the school, to obtain parental consent for field trips, he cannot claim that the regulation imposed no duty on him. As a principal, the appellant was the administrative head of the school with the responsibility of ensuring that the Board's regulations were followed and that the teachers under his supervision abided by proper procedures.

In addition, a cursory reading of the second paragraph of Regulation No. 6218 reveals that the regulation establishes guidelines for every field trip taken. The second paragraph states specifically what each request for a field trip outside the school district should include. Although the sentence requiring parental consent does not define the kind of permission which is required, it is clear that Regulation No. 6218 contemplates a written permission slip for each and every field trip. This becomes self-evident when the sentence requiring parental consent is read in conjunction with the rest of the second paragraph.

█ In his second point, the appellant contends the Board failed to follow the procedures mandated by § 168.221, RSMo 1978. He characterizes his suspension as a reduction of salary resulting from inefficiency in the line of duty. He argues that in cases where a salary is reduced, § 168.221.-4, RSMo 1978, requires the superintendent to notify a principal at least one semester before the presentment of formal charges. We disagree.

The appellant erroneously characterizes his suspension as a reduction in salary. A reduction in salary results in doing the same work for a decrease in pay. If we followed the appellant's argument, then every removal, whether temporary or permanent, would be a reduction in salary. In the present case, the Board suspended the appellant from December 5, 1984, to the end of the 1984–85 school year because he violated two Board regulations. Accordingly, the Board's action temporarily removing the appellant from his duties was entirely consistent with the procedure for removal set forth in 168.221.3, RSMo 1978.

Moreover, by contending that his charge was "inefficiency in the line of duty" and his punishment a reduction in pay, the appellant mistakenly injected the issue of the notification required by § 168.221.4, RSMo

1978. Under § 168.221.4, a one semester notice period is appropriate because the subsection contemplates situations where the salary of a teacher or principal is reduced for a period of time because of deficiencies in performance which may be remediable. In the present case, the appellant was charged not with "inefficiency in the line of duty" but with the violation of Regulations No. 2740 and No. 6218. Where Board regulations are violated, § 168.221.3, RSMo 1978, requires no one semester notice period.

In his third point, the appellant challenges the Board's findings of fact, conclusions of law, and decision on four grounds: (1) the Board's findings that the appellant violated Regulations No. 2740 and No. 6218 were not supported by competent and substantial evidence upon the whole record; (2) the Board's decision was based on hearsay evidence; (3) the Board admitted the testimony and reports of Dr. Mahan which constituted lay opinion without a proper foundation; and (4) the Board ignored the appellant's testimony.

■ Our review of the Board's decision is limited to a determination of whether its decision is supported by competent and substantial evidence upon the whole record. § 536.140.2(3), RSMo 1978. We may not substitute our judgment on the evidence nor may we set aside the Board's decision unless it is unsupported by competent and substantial evidence. *Kimble v. Worth County R-III Board of Education*, 669 S.W.2d 949, 951–952 (Mo.App.1984), *cert. denied,* — U.S. —, 105 S.Ct. 331, 83 L.Ed.2d 268 (1984). We also consider the evidence in the light most favorable to the Board's decision together with all reasonable inferences which support it. *Conder v. Board of Directors of Windsor School*, 567 S.W.2d 377, 379 (Mo.App.1978). In addition, we defer to the Board's determination of the credibility of the witnesses. *Hanebrink v. Parker*, 506 S.W.2d 455, 458 (Mo.App.1974).

■ Moreover, if the evidence before the Board would warrant two opposed findings, we are bound by the Board's determination and it becomes irrelevant that there is supportive evidence for the contrary finding. *Hanebrink*, 506 S.W.2d at 458. Indeed, there is a strong presumption of validity in favor of a school board's decision because the courts are reluctant to interfere with a board's broad discretion in matters affecting school management. *Conder*, 567 S.W.2d at 379; *Saunders v. Reorganized School District No. 2 of Osage County*, 520 S.W.2d 29, 35 (Mo.1975).

■ In the present case, the Board made the following findings in support of its conclusion that the appellant violated regulation No. 2740: (1) the appellant told Mrs. Kozlen that her students were not to be allowed in the water but did not tell the other sixth grade teachers; (2) the appellant failed to conduct follow-up measures to ensure that his directive would be carried out; (3) the appellant failed to secure specific parental permission for the students to enter the Meramec River; (4) the appellant neither inspected the buses transporting the students nor provided supervision for the loading and departure of these buses; and (5) by this last omission, the appellant failed to observe that at least one student possessed an inflated raft.

Certainly, when the whole record is considered in the light most favorable to the Board, these findings are supported by competent and substantial evidence. These findings also demonstrate that the appellant failed to take the "reasonable precautionary measures" required by Regulation No. 2740. Although the appellant expressed his initial concern about the students entering the river to Mrs. Kozlen, he did nothing further to ensure that his directive would be followed. He did not advise the other sixth grade teachers nor respond to the possibility of sixth graders entering the water after he viewed the photographs of the seventh grade students in the Meramec River. Indeed, the record reveals that the appellant undertook only minimal and ineffective measures to provide for the safety of the students on the field trip.

Likewise, substantial and competent evidence supports the Board's conclusion that the appellant violated Regulation No. 6218 which requires that "[w]ritten consent of the parents must be secured by the teacher or other school official" for field trips. In support of its conclusion, the Board found that (1) the appellant failed to secure specific parental permission for the field trip to Meramec Caverns; (2) the appellant authorized the use of the blanket permission form; and (3) the appellant failed to secure specific parental permission for the children to enter the water. As discussed earlier, Regulation No. 6218 contemplates specific parental consent for each and every field trip. In the present case, although the appellant had instituted the use of a "blanket approval" system, it is clear that neither the appellant nor anyone under his supervision obtained specific parental consent for the sixth grade field trip to Meramec Caverns on May 18, 1984.

In his third point, the appellant also challenges the Board's findings, conclusions, and decision by positing a number of alleged evidentiary infirmities. The first of these contentions involves the appellant's argument that the Board's decision is flawed by the reception of hearsay statements. We disagree. The technical rules of evidence do not control in an administrative hearing. *Giessow v. Litz*, 558 S.W.2d 742, 750 (Mo.App.1977). Indeed, § 536.-070(7), RSMo 1978, of the Administrative Procedure Act, requires an administrative tribunal to receive proffered evidence into the record regardless of any evidentiary objections. Thus, the Board's action admitting the various hearsay statements was not improper. In addition, as previously stated, we have reviewed the whole record and find that there is sufficient competent evidence to sustain the Board's decision. *Giessow*, 558 S.W.2d at 750.

The appellant likewise argues that the Board's decision is unsupported by competent and substantial evidence because of the testimony and reports of Dr. David Mahan who investigated the circumstances of the drowning and interviewed the teachers involved. The appellant contends that Dr. Mahan's testimony and reports constituted lay opinion testimony without a proper foundation. *See Downs v. Personnel Advisory Board*, 671 S.W.2d 12, 16 (Mo. App.1984). We disagree. In the present case, Dr. Mahan's testimony and reports were not offered as lay opinion testimony. Moreover, as we have already stated, the Board's decision is supported by competent and substantial evidence aside from Dr. Mahan's evidence and any other contested evidence.

In his last evidentiary challenge, the appellant alleges that his testimony was ignored by the Board. He contends that his testimony went uncontradicted and unimpeached. We disagree. At his hearing, the appellant denied seeing the photographs of the seventh graders in the Meramec River on May 11, 1984. Two teachers, Mrs. Small and Mrs. Wells, directly contradicted his testimony regarding the photographs. In its decision, the Board specifically noted that it had made its findings after weighing the credibility of the witnesses. When the Board found, contrary to the appellant's testimony, that he had seen the pictures, the Board implicitly judged the appellant's credibility adversely and did not improperly discount his evidence.

We last address the appellant's final point on appeal. He argues that we should set aside the Board's decision because it was arbitrary, capricious, unreasonable, and an abuse of discretion. The appellant finds the Board's decision untenable because it imposed a six month suspension instead of the fifteen day one recommended by the superintendent of schools. We disagree.

School boards are granted broad powers and discretion in the management of school affairs. § 162.621, RSMo 1978; *Brown v. Weir*, 675 S.W.2d 135, 139 (Mo.App.1984). Indeed, any action taken

by the superintendent of a school district with regard to the employment or termination of a teacher or a principal is not final until acted upon by the school board. § 168.221.3, RSMo 1978; *Brown*, 675 S.W.2d at 139. In the present case, the Board was free within its broad discretion to deviate from the recommended punishment and, in its place, to impose an entirely different one. As a court sitting in judicial review, we should not substitute our judgment for the Board's as to what measure of punishment was appropriate in the present case. Under these circumstances, the Board's decision was not arbitrary, capricious, unreasonable, or an abuse of discretion.

Judgment affirmed.

CRANDALL, P.J., and SATZ, J., concur.