Constance WESTBROOK, Janice Turley, Alma Walker, Jittaun Kee, and Mona Kozlen, Plaintiffs-Appellants,

v.

BOARD OF EDUCATION OF the CITY OF ST. LOUIS and Jerome B. Jones, Defendants-Respondents.

Nos. 51476 to 51480.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 13, 1987.

Motion for Rehearing and/or Transfer Denied Feb. 11, 1987.

Application to Transfer Denied March 17, 1987.

Michael Radzilowsky, Chicago, Ill., Bruce Feldecker, St. Louis, for plaintiffs-appellants.

Lashly, Baer & Hamel, Ken Brostron, St. Louis, for defendants-respondents.

PUDLOWSKI, Presiding Judge.

Appellants, Mona Kozlen, Janice Turley, Alma Walker, Constance Westbrook and Jittuan Kee, appeal from the judgment of the Circuit Court of the City of St. Louis affirming the decision of the Board of Education of the City of St. Louis. The Board's decision permanently dismissed all five of the appellants from their positions as sixth grade teachers at Clinton Middle School. Prior to the Board's decision, all of the appellants except Jittuan Kee were permanent teaching employees at the Middle School. Kee was a probationary teacher. The appellants' dismissals stemmed from the drowning death of Jamie Walker, a student in appellant Westbrook's class. The student drowned on a sixth grade field trip to Meramec Caverns on May 18, 1984. After the tour of the caverns, no instructions were given to the students as to

where they could and could not go and they scattered in various directions. The possibility of water activities had been discussed prior to the trip and appellant's Kozlen, Turley, Walker and Westbrook had agreed to permit their students to wade in the river. Kee realized that the students were being allowed in the water a short time after the tour ended when one of her students returned to the parking lot wet. She did not object to the water activity at that point. One of the students had been allowed to bring an inflated raft on one of the two school busses. The students were not required to wear life jackets and they were not separated between swimmers and nonswimmers. It was while playing in the river that Jamie drowned.

The Board charged all five of the teachers with having violated Board Regulation 6218 which requires in part that "[t]he teacher ... should use reasonable care to look out for the safety of students during the [field] trip." Mona Kozlen was also charged with having violated Regulations 5210 and 5246. Board Regulation 5210, Insubordination, requires that "[a]ll employees shall obey all lawful orders and directives issued by their superiors." Board Regulation 5346, Grounds for Disciplinary Action, states that any violation or "failure to obey ... the published rules or regulations of the Board, ... or lawful directive issued by the Superintendent or his/her designee" is grounds for disciplinary action up to and "including dismissal." The basis of the separate charges against Kozlen was that prior to the field trip, the principal of the Clinton Middle School, Maurice Bell, who has previously appealed disciplinary action taken against him in regard to the same incident,[1] told Kozlen "on this field trip, no water." This, the Board found, was a lawful directive issued by the principal of Clinton Middle School who was the agent and designee of District Superintendent, Jerome Jones, for purposes of making rules for Clinton Middle School and its teachers. A public hearing began on July 16, 1984 and continued

periodically through August 17, 1984. The Board released its decision on October 30, 1984 finding all five of the teachers had committed the violations charged.

The teachers then petitioned the Circuit Court of the City of St. Louis to review the Board's decision. This appeal followed the Circuit Court's February 27, 1986 order affirming the decision of the Board.

On appeal, the teachers allege that the Circuit Court erred in affirming the Board's decision.

The appellant teachers allege: 1) that the evidence failed to establish that they had willfully and persistently violated Board regulations and that therefore they could not be discharged for having violated a Board regulation or, in Mona Kozlen's case, regulations; 2) that contrary to state law they were formally charged prior to notice having been given to them of the possibility of charges being filed in the future; 3) that Board Regulation 6218 did not specifically inform the appellant teachers as to what conduct was prohibited; 4) that the Board relied in part in making its decision on exhibits which contained hearsay; and 5) that the Board was biased by a desire to avoid a lawsuit by Jamie Warren's family or at least to minimize any damage award. We find no error.

We first note that Section 168.114 RSMo 1978, the general statute dealing with when a permanent teacher may be discharged,[2] does require that before a teacher may be discharged for violating Board regulations, the teacher's violation of the regulations must be shown to be "willful or persistent." However, section 168.221 RSMo 1978, dealing specifically with metropolitan districts, allows for the discharge of a teacher for "violation of the published regulations of the school district" without any proof that the violation was willful or persistent. "Where one statute deals with the subject in general terms and another in specific terms, the two should be harmonized when reasonable; but to the extent of any discord between them, the definite

---

1. See, Bell v. Board of Education of the City of St. Louis, 711 S.W.2d 950 (Mo.App.1986).

2. We note that Jittuan Kee was not a permanent teacher.

statement prevails." *Bartley v. Special School District of St. Louis County,* 649 S.W.2d 864, 867 (Mo. banc 1983). Section 168.114.1(4) requires that in order for a board of education to dismiss a permanent teacher for violation of a board regulation there must be a showing that the violation was willful or persistent. Section 168.221.3 states that any teacher may be removed because of a violation of the published regulations of the school district. Appellants argue that the difference in the two statutes results simply from an error in drafting and that the legislature intended § 168.221.3 to have the same meaning as § 168.114.1(4). If this were the case, there would have been no need for the enactment of § 168.221.3, since in the absence of that statute, § 168.114.1(4) would be applicable. We must construe statutes as they stand and give effect to them as written. *State ex rel. Missouri State Board of Registration for the Healing Arts v. Southworth,* 704 S.W.2d 219, 224 (Mo. banc 1986).

█ Sections 168.114 and 168.221 are directly in conflict with each other with regard to whether or not, absent a showing of willful disobedience, a teacher can be discharged, as in the case here, for a one time violation of a regulation published by the school district's board of education. Since § 168.114 deals with school districts in general and § 168.221 deals with metropolitan school districts, in particular, § 168.221 prevails as the more definite statement. Therefore, the St. Louis City Board of Education had the authority to fire the appellant teachers for a one time violation of Board regulations, even in the absence of a showing that the violation was willful.

█ We turn next to appellants' contention that the Board was required by state law to give them notice of the possibility of charges being filed against them in the future before written charges were filed. Appellants fail to support their contention by citation to any particular Missouri statute. Section 168.221 specifically requires such prior notification, as opposed to notification of the charges and of the date set for a hearing, which was given here, only where the potential charge is inefficiency. The only other statute which appellants may have been making reference to is § 168.116.2 RSMo 1878, formerly § 168.-108, which provides that at least thirty days before formal charges are served on the teacher, he or she must be informed of the possibility of charges, if the charges pertain to incompetency, inefficiency, or insubordination. None of the five appellants were charged with inefficiency or incompetence, and only Mona Kozlen was charged with insubordination.

Thus, even if no notice was given prior to the filing of formal charges, the discharges for violation of Board Regulation 6218 can stand if there was competent and substantial evidence before the Board that Regulation 6218 had in fact been violated. *See* § 536.140.2(3) RSMo 1978.

Appellants contend that it was improper for the Board to have used Regulation 6218 as a basis for dismissing them because Regulation 6218 did not inform them as to specifically what conduct was required of them and what conduct was prohibited.

Nowhere in their argument do appellants use the term vagueness. But their allegation is in fact an allegation that the regulation is too vague to be enforced.

They go so far at one point in their brief as to state that Regulation 6218 is not prohibitory and mandatory such that one could disobey it, but is rather descriptive and recommendatory. Appellants then cite this court to *Carter City School District R–1 v. Palmer,* 582 S.W.2d 347 (Mo.App. 1979).

█ In *Carter,* the Southern district held that a regulation cannot be violated if it is phrased in such a way that it is simply informational or recommendatory and does not indicate that specific action is *required.* The *Carter* Court also found that the use of the word "may" in a regulation did not establish a requirement. *Carter, supra* at 349. However, nothing in the *Carter* opinion indicates that the word "should" also suggests that the regulation is not setting forth a requirement. Regulation 6218 stated that a teacher "should use reasonable

care to look out for the safety of students during a trip." A logical reading of this regulation would lead one to infer that the Board was informing teachers that they were *required* to take reasonable care for the safety of students and not simply that the Board wanted the teachers to take reasonable care or preferred that they do so. Therefore, Regulation 6218 was mandatory and was capable of being violated by the appellants.

As for our review of the regulation for vagueness, "so long as the terms or words used in the regulation are of common usage and are understandable by persons of ordinary intelligence, the regulation satisfies the constitutional requirement of definiteness and certainty." *Bell v. Board of Education of the City of St. Louis,* 711 S.W.2d 950, 953 (Mo.App.1986). The appellants point out that Regulation 6218 does not specifically "prohibit students from going into the water without specific permission slips" from their parents. They fail, however, to note the obvious fact that no board of education could anticipate every possible contingency. The Board's regulations by their very nature must be somewhat broad regulations of conduct.

■ The term "reasonable care" is "often used as the guiding standard in statutory and case law." *See Bell, supra* at 953. A person is negligent as a general rule if he fails to exercise reasonable care. He is not negligent if he does exercise reasonable care. As a practical matter, it is simply not often feasible to derive a more specific standard of care. In a trial court where a tort matter is tried to a jury, it is a jury of ordinary people who must answer the question of whether or not reasonable care was exercised. "Reasonable care" is certainly a term in common usage and just as we held in *Bell* that "reasonable precautionary measures" was not too vague a standard, *Bell* at 953, we hold here that "reasonable care" was a standard which was understandable by a person of ordinary intellect and was not vague when applied to the conduct required of a teacher.

Regulation 6218 is clear in the fact that it requires reasonable care under all the circumstances. The Board's finding that Regulation 6218 was violated therefore justified the dismissal of the appellants unless the decision was not based on competent and substantial evidence.

As noted above, however, appellants contend that the Board's decision was not based on competent and substantial evidence, but was rather based on inadmissible hearsay and bias. The allegation that the Board's decision rests on inadmissible hearsay is derived from the fact that the Board admitted certain exhibits which contained hearsay statements from students.

There are two simple replies to appellants contention that the Board's decision cannot be allowed to stand because the Board relied on hearsay. First, in its decision, the Board explicitly stated: "the Board has not relied upon any hearsay testimony concerning statements made by the children." We have no reason to disbelieve that statement and appellant has presented us with none. The second reply is that:

The technical rules of evidence do not control in an administrative hearing. *Giessow v. Litz,* 558 S.W.2d 742, 750 (Mo.App.1977). Indeed § 536.070(7) RSMo 1978, of the Administrative Procedure Act, requires an administrative tribunal to receive proffered evidence into the record regardless of any evidentiary objections. Thus the Board's action admitting the various hearsay statements was not improper.

*Bell, supra* at 956.

■ Our review of the record indicates that the Board's decision rested on competent and substantial evidence that the appellants had failed to take reasonable precautions to avoid an event such as Jamie Warren's death. The students were, even by the appellant teachers own admissions, allowed to play in the Meramec River with virtually no supervision. The appellants in fact admitted that they had not even ascertained who could and could not swim. Thus there is no issue as to whether the Board had before it competent and substan-

tial evidence that Regulation 6218 had been violated.

Appellants, however, allege that the Board's decision was based on its desire to avoid litigation with Jamie Warren's family and not on its review of the evidence. No evidence is presented to support this allegation. In fact, the school board was faced with the threat of a lawsuit by Jamie Warren's family no matter what action it took after the fact with regard to retaining the teachers who were along on the field trip.

Even if the Board did have a "stake in the outcome" of the proceeding held before it, the "law is well settled that presentation of a contested case to the administrative agency which is itself interested in the outcome does not vitiate the proceedings." *Tonnar v. Missouri State Highway and Transportation Commission,* 640 S.W.2d 527, 533 (Mo.App.1982). Furthermore, "necessity dictates that the only board authorized to hold the hearing must proceed." *Rose v. State Board of Registration for the Healing Arts,* 397 S.W.2d 570, 575 (Mo. 1965).

■ The St. Louis City School Board was the only administrative body authorized to hold a hearing or take action with regard to disciplinary action against the appellants. Therefore, by the rule of necessity the Board, even if it had a stake in the outcome, was impowered to hear the evidence and make a decision. It did not act improperly by doing so.

The circuit court's ruling upholding the Board is affirmed.

CRANDALL and KAROHL, JJ., concur.