Charles CLARK, Appellant,

v.

The BOARD OF DIRECTORS OF the SCHOOL DISTRICT OF KANSAS CITY, Missouri, Respondent.

No. WD 50877.

Missouri Court of Appeals, Western District.

Feb. 20, 1996.

William S. Robbins, Jr., Kansas City, for appellant.

Maurice Watson, Robert S. Bruer, Kansas City, for respondent.

Before SPINDEN, P.J., and BERREY and LAURA DENVIR STITH, JJ.

BERREY, Judge.

Charles Clark, a tenured teacher with the Kansas City, Missouri School District, appeals the termination of his employment. He qualified as a "permanent teacher" under the Teacher Tenure Act because he was employed by the same school district for at least five successive years as specified in § 168.104(4) RSMo 1994. After a public hearing pursuant to § 168.118 RSMo 1994, the Board of Directors of the Kansas City, Missouri School District found the disciplinary methods used by Charles Clark ("appellant") to be "inappropriate corporal punishment" and refused to renew his indefinite employment contract. In rendering its decision, as required by § 168.114 RSMo 1994,[1] the Board of Directors ("Board") concluded that, based on substantial evidence, appellant "willfully and/or persistently failed to obey the published regulations of the Board ... by grabbing and striking students" and was "unfit to instruct or associate with children" due to "evidence of a mental or physical condition." The Board also concluded that the charges leveled against appellant were "fairly and thoroughly investigated" and that appellant was afforded adequate due process. The Jackson County Circuit Court subsequently affirmed the Board's decision.

Appellant argues that the Board's decision infringed on his constitutional rights by depriving him of procedural and substantive due process. Specifically, he argues: (1) the Board failed to provide notice of the right to representation and notice of the special charges against him; (2) the Board's eight-month delay in conducting a hearing should bar the Board's decision to terminate due to laches; (3) the Board's arbitrary time limits utilized during the hearing prevented him from having a "full and fair opportunity" to challenge the charges against him; and (4) it was not his responsibility to raise procedural objections to rules and procedures previously established by the Board. Appellant further challenges the Board's conclusions that he is unfit to teach and that he willfully or persistently violated published regulations have no basis in fact. We affirm.

The facts are as follows. Prior to his termination, Clark had served as a teacher in the Kansas City School District ("District") for nearly twenty years. The events leading up to appellant's termination took place at Woodland Elementary School where he taught fourth grade during the 1991–92 school year. Appellant had been a teacher at Woodland for about ten years.

The first incident of alleged abuse occurred on or about September 16, 1991. The mother of one of appellant's students, L.P.,[2] contacted Stacia Brown, Woodland's interim principal, and alleged that appellant had struck her son earlier that day. L.P. testified at the hearing that appellant "put his fist ... up to my chest, and slammed me down in my chair." Stacia Brown investigated the complaint by conferring with appellant, L.P. and his father. Appellant claimed he did not recall the alleged incident. No bruises or cuts were found on L.P. and no "Hotline" call to the Division of Family Services ("DFS") was made. The matter was not documented until December 19, 1991 in a letter prepared by Stacia Brown.

On October 21, 1991, Stacia Brown received another phone call from the mother of a different student, T.T., who complained of a bruise on her son's arm. T.T., who was ten years old at the time of the hearing, claimed that appellant had "yanked" his arm and pulled him out of his seat for "acting up."

1. § 168.114 provides in relevant part:

An indefinite contract with a permanent teacher shall not be terminated by the board of education of a school district except for *one or more* of the following causes (emphasis ours):
(1) Physical or mental condition unfitting him to instruct or associate with children;
(2) Immoral conduct;
(3) Incompetency, inefficiency or insubordination in line of duty;
(4) Willful or persistent violation of, or failure to obey, the school laws of the state or the published regulations of the board of education of the school district employing him;
(5) Excessive or unreasonable absence from performance of duties; or
(6) Conviction of a felony or a crime involving moral turpitude.

2. Students will be referred to by their initials in order to protect their interests.

Other bruises were found on the arms of two other students, a girl, P.C., who do not testify at the hearing and another ten year-old boy, J.T., who did testify. P.C.'s bruise was allegedly caused by appellant striking her in the forearm with a book. These three bruises appeared during the third week of October, 1991.

On October 22, 1991, Stacia Brown confronted appellant with the report from T.T.'s mother. Appellant again could not recall any such incident, but, according to Stacia Brown, he said, "It won't happen again." That same day Stacia Brown called the hotline to DFS and reported an alleged incidence of child abuse and named appellant as the perpetrator.

Ms. Brown then conducted an investigation by randomly interviewing several of appellant's students. During these interviews, Ms. Brown noticed bruises on the arms of two of appellant's students, T.T. and P.C. Based on these observations and other information reported by the students regarding appellant's conduct, she suspended appellant with pay on October 25, 1991.

A DFS social worker was assigned to the case and, after performing his own investigation, issued a preliminary finding of "reason to suspect" abuse.

In February, 1992, appellant was reinstated after a meeting with Board representatives, but he worked only in a clerical capacity and had no direct contact with students. However, on June 29, 1992, Dr. Julia Hill, Board president, notified appellant in writing that he had been terminated. The writing, in accord with § 168.116 RSMo 1994,[3] contained the specific grounds alleged for dismissal and informed appellant of his right to a hearing.

The hearing was held on July 28, 1992. On August 24, 1992, the Board issued its decision to terminate appellant.

In Point I of his brief, appellant outlined the standard of review applicable to administrative decisions. We concur that we are to review the findings of the Board rather than the judgment of the circuit court. The standard of review regarding the Board's conclusions will be addressed in detail below in parts II and III.

Appellant contends three points of error on the part of the Board.

I

In Point II of appellant's brief, he contends that the Board's decision denied him substantive and procedural due process. This broad contention is followed by four specific claims of impaired procedural due process. Because two of appellant's claims are connected, we have combined them and will address each of the resulting three claims separately.

Our due process analysis requires two distinct steps. First, it must be determined whether appellant was denied procedural due process as provided by the Fourteenth Amendment. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property ... [and] the range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). A property interest in employment can be created by statute, ordinance or by an express or implied contract. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). As previously noted, appellant qualified as a permanent teacher under the Missouri Teacher Tenure Act and, therefore, had a property interest in continued employment protected by procedural and substantive due process. §§ 168.114–168.120 RSMo 1994; *Moore v. Board of Educ. of Fulton Public School No. 58*, 836 S.W.2d 943, 947 (Mo.banc.1992), *cert. denied*, 507 U.S. 916, 113 S.Ct. 1270, 122 L.Ed.2d 666 (1993). Second, once a protected interest is found to have been infringed, it must then be determined whether the proce-

---

3. Section 168.116.1 RSMo 1994 states in relevant part:

(1) The indefinite contract of a permanent teacher may not be terminated by the board of education until after service upon the teacher of written charges specifying with particularity the grounds alleged to exist for termination of such contract, notice of a hearing on charges and hearing by the board of education if requested by the teacher.

dures provided were sufficient to satisfy constitutional scrutiny. The fundamental requirement of the Due Process Clause is to provide notice and an opportunity for a hearing to a person subjected to a denial of a protected interest. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Roth,* 408 U.S. at 569–70, 92 S.Ct. at 2705; *Belton v. Board of Police Comm'rs,* 708 S.W.2d 131, 137 (Mo.banc.1986). Compliance with procedural due process requires the hearing be held "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

### A.

Appellant first claims he was neither notified of the right to representation nor of the charges against him prior to his suspension.

■ Appellant's point regarding representation lacks merit. The District's hotline procedures provide that if a district employee is the alleged perpetrator then he or she should be informed of the right to have counsel or a union representative present during a DFS investigation. The suspension letter sent by Stacia Brown on October 25, 1991, did not include this information. However, a District official verbally notified appellant that he had a right to have counsel present before discussing the alleged abuse in a meeting held shortly after appellant's suspension. Furthermore, appellant was accompanied by counsel on November 15, 1991, during an interview conducted by DFS.

■ Appellant next contends that some sort of "pre-deprivation" hearing was required prior to his suspension so he could be provided with notice of the charges against him and an opportunity to respond.

This argument is also without merit. Appellant admits that he was verbally notified of the charges raised by T.T.'s mother during his meeting with Ms. Brown on October 22, 1991. Ms. Brown also notified him in the suspension letter written on October 25, 1991, that he had used "inappropriate methods in disciplining children." Thus, while it is true that appellant was unaware of allegations forwarded by other students at the time of his suspension, he had received both oral and written notice regarding the allegations pertaining to T.T.

Appellant was also given a meaningful opportunity to respond to charges during his meeting with Ms. Brown on October 22, 1991. Appellant responded by denying the allegations.

■ Due process analysis requires the balancing of three competing interests: (1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional safeguards; and (3) the government's interest. *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903. These interests were applied in *Belton,* in which a Kansas City police officer was suspended without pay for ten days for alleged misconduct following a criminal investigation. The Court determined that while the "temporary loss" of compensation was not insignificant, it was "less compelling" than termination of employment. *Belton,* 708 S.W.2d at 138. Such a deprivation was outweighed by the government's interest in maintaining discipline among police officers. *Id.* Finally, because adequate pre- and post-deprivation procedures were available, the risk of erroneous deprivation was slight. *Id.*

■ A similar conclusion is reached when the balancing test is applied to the facts of the instant case. First, the record shows the procedural safeguards employed by the District adequately protected appellant's interest pending final disposition of his case. Although appellant was not allowed to teach following his suspension, he continued to receive compensation for the entire period leading up to his termination. That appellant was barred from teaching qualifies as a deprivation of a protected property interest, but such a deprivation is clearly outweighed by the government's interest in shielding school children from potential abuse. Finally, as in *Belton,* the risk of erroneous deprivation is small since the charges against appellant were thoroughly investigated both before and after his suspension.

## B.

 Appellant also contends that the doctrine of laches should bar the Board's attempt to terminate him because the eight-month delay in conducting a hearing rendered the charges "stale." Laches is an equitable doctrine that functions to bar a claim if an unreasonable delay prejudices an opposing party. *O'Connell v. School Dist. of Springfield R–12,* 830 S.W.2d 410, 417 (Mo. 1992). Appellant failed to demonstrate the loss of any evidence or the unavailability of any witnesses. *Kimble v. Worth County R–III Bd. of Educ.,* 669 S.W.2d 949, 954 (Mo. App.), *cert. denied,* 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 268 (1984). The Board evaluated the credibility of the witnesses at the hearing and based its decision upon the evidence presented. *Board of Educ., Mt. Vernon Schools v. Shank,* 542 S.W.2d 779, 782 (Mo.banc.1976). Appellant had ample time to prepare his defense and we find no evidence of prejudice against him in the record.

## C.

 Appellant finally claims that the Board's imposition of arbitrary time limits during the hearing prevented him from having a full and fair opportunity to rebut the charges against him and that any attempt to object to the time limits would have been "futile." This is appellant's strongest argument and will be given due consideration.

 At the commencement of the hearing, the Board imposed a four hour-time limit for the presentation of evidence. Each party was given two hours to present its case and any time devoted to cross-examination would be subtracted from its allotted two hour limit. Respondent proceeded with its case first and called seven witnesses, each of which were cross-examined by appellant. At the close of respondent's case appellant had consumed the majority of his two hours cross-examining respondent's witnesses and had only 42 minutes remaining with which to present his defense. Appellant understandably claims that the timing procedure denied him his right to a full and fair hearing in a meaningful manner. Due process requires that administrative hearings afford parties a fair hearing and contain rudimentary elements of fair play. *Tonkin v. Jackson County Merit Sys. Comm'n,* 599 S.W.2d 25, 32–33 (Mo.App.1980).

In support of this argument, appellant cites *In re Marriage of Goellner,* 770 P.2d 1387 (Colo.App.1989), in which the court struck down a time allotment similar to the one used by the Board in the instant case. In that case, the court allowed each party six hours in a marriage dissolution proceeding to present its case, including time for cross-examination of opposing witnesses. *Id.* at 1388. At the close of the husband's case, the wife had only 30 minutes remaining of her allotted time. *Id.* The court balanced the wife's due process rights and the interest of judicial economy and concluded that "while the trial court may have an obligation to move matters before it as rapidly as possible, litigants are nevertheless entitled to have sufficient time to make an orderly presentation of their case." *Id.* at 1388–89.

 Although persuasive, *Goellner* is distinguishable because the wife's counsel moved for a continuance so "essential" evidence could be presented. *Id.* at 1388. The trial court denied the motion, but the trial court was given an opportunity to rule on the issue. In the instant case, the record clearly shows that both parties, via counsel, agreed to the time constraints at the beginning of the hearing and understood that they would be enforced by the Board. More importantly, appellant neither objected to the time limits during the hearing nor requested additional time. Under Missouri law, the general rule is that administrative actions should not be set aside by a court "unless the agency has been given a prior opportunity, on timely request by the complainant, to consider the point at issue." *Mills v. Federal Soldiers Home,* 549 S.W.2d 862, 868 (Mo.1977). The *Mills* court also identified the following exceptions quoted from *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941):

> ... There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court

or administrative agency below. [cites omitted]

Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy.

*Mills,* 549 S.W.2d at 868.

■ As in *Mills,* because appellant was represented by counsel at the hearing and was afforded the opportunity to contest the time limitation, none of the above exceptions apply. An administrative agency has broad discretion to reasonably regulate the time periods afforded parties to present evidence. *Bernstein v. Board of Educ. of Prince George's County,* 245 Md. 464, 226 A.2d 243 (1967). The time limits in the instant case may have been unreasonable under the circumstances. However, we find unconvincing appellant's argument that any objection to the time limits imposed by the Board would have been futile. Such an objection may or may not have been futile. We will never know how the Board might have responded because no objection was made by appellant despite having the opportunity to do so.

Appellant further argues any objection to the notice of charges signed by Dr. Julia Hill because they contained stale charges would also have been futile. This contention is without merit.

Appellant's Point II is denied.

## II.

■ On appeal from an agency decision in a contested case, an appellate court generally reviews the findings of fact and decision of the agency, not the judgment of the circuit court. *City of Cabool v. Missouri State Bd. of Mediation,* 689 S.W.2d 51, 53 (Mo.banc.1985). Judicial review of an administrative decision is limited to a determination of whether the decision is supported by "competent and substantial evidence upon the whole record, whether it was arbitrary, capricious or unreasonable, and whether the

administrative agency abused its discretion." *Franklin v. Board of Directors, School Dist. of Kansas City,* 772 S.W.2d 873, 877 (Mo.App.1989); § 536.140.2 RSMo 1994. Evidence should be considered in the light most favorable to the Board's decision, together with all reasonable inferences which support it. *Id.* at 878. Furthermore, as there is a strong presumption of validity in favor of a school board's discretion in matters affecting school management, courts are generally reluctant to interfere with such discretion. *Id.* at 877–78. Substantial evidence is merely evidence which, if true, has probative force upon the issues, i.e., evidence favoring facts which are such that reasonable men may differ as to whether it establishes them. *Fujita v. Jeffries,* 714 S.W.2d 202, 206 (Mo.App. 1986).

■ An alternative standard of review applies in cases where appellant's challenge "involves only the application by the agency of the law to the facts." § 536.140.3 RSMo 1994; *Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Comm'n,* 669 S.W.2d 548, 552–53 (Mo.banc.1984). In such cases, the reviewing court "may weigh the evidence for itself and determine the facts accordingly.... In making such determination the court shall give due weight to the opportunity of the agency to observe the witnesses and to the expertness and experience of the agency." *Id.*

■ Appellant's Point III argues that the Board's conclusion that there was "evidence of a physical or mental condition making him unfit to instruct or associate with children" has no basis in fact.

We agree with appellant that the Board erred in coming to this conclusion since no psychiatrist, psychologist or medical doctor were called to testify as to appellant's mental and physical health. An inference, or some evidence, of a psychiatric, physiological or psychological condition is necessary to terminate a teacher for a condition unfitting him to instruct or associate with children under § 168.114.1(1) RSMo 1994. *Pollard v. Board of Educ. Reorganized School Dist. No. III,* 533 S.W.2d 667, 671 (Mo.App.1976). The Board is required to cite only one cause

under § 168.114 RSMo 1994 as a basis for its decision to terminate.[4] Therefore, as the evidence supports the Board's conclusion discussed below in Part III, we decline to comment further on this issue.

### III.

Appellant's last point argues that the Board's conclusion that he "willfully and/or persistently failed to obey the published regulations" of the District has no basis in fact. The Board concluded that:

> Based on substantial evidence, Mr. Clark willfully and/or persistently failed to obey the published regulations of the Board ... by grabbing and striking students;[5] specifically, Policy Nos.[6] 19775, 19800, 19825, 39775 and 27600;[7] *or* the Code of Student Conduct; *or* the Corporal Punishment Policy (emphasis ours).

 On this point, appellant first argues that the evidence was insufficient to support the Board's conclusion that he committed the alleged acts of inappropriate discipline as charged. The Board based its conclusion on the testimony it received at the hearing. The determination of the credibility of witnesses is a function of the administrative tribunal. *Shank,* 542 S.W.2d at 782. In contradiction of the testimony given by students and District officials, appellant firmly denied the allegations of abuse. However, "if evidence before the Board warranted either of two decisions, the Board's decision is binding on judicial review, and it is irrelevant that there may be supportive evidence of an opposing view." *Kimble,* 669 S.W.2d at 952. We hold that the record demonstrates competent and substantial evidence that appellant committed the acts with which he was charged.

Appellant next argues that the policies he allegedly violated were merely descriptive or recommendatory and not mandatory.

 In support of this argument, appellant cites *Carter County School Dist., R–1 v. Palmer,* 582 S.W.2d 347, 349 (Mo.App.1979) (holding that the statute [Teacher Tenure Act] does not allow termination on the basis of a regulation which neither forbids nor commands action). However, a Missouri court has determined that the word "should" can be deemed to be mandatory. *Westbrook v. Board of Educ.,* 724 S.W.2d 698, 701–02 (Mo.App.1987). In that case the policy in question read: "[a teacher] should use reasonable care to look out for the safety of students during a trip." The court found that a "logical" reading of this policy advised "teachers that they were required to take reasonable care for the safety of students and not simply that the Board wanted the teachers to take reasonable care or preferred that they do so." *Id.* at 702. We are inclined to believe that the policies noted above contain mandatory directives for teachers to obey. Therefore, we find that violation of these policies constitutes a valid basis for termination under § 168.114.1(4).

 Assuming for the moment that the above policies are not mandatory, appellant's violation of the District's corporal punishment policy,[8] which was the only published regulation introduced into evidence, is clearly mandatory and serves as a basis for appellant's dismissal standing alone. This conclu-

---

**4.** *See supra* note 1.

**5.** In its findings of fact, the Board listed four separate occasions where appellant used inappropriate discipline.

**6.** No. 19775 reads in part:
 Teachers *should* maintain orderly rooms conducive to effective learning, exercise wise control over the behavior of the pupils, and utilize procedures in dealing with deviant behavior which are consistent with statute or system-wide regulations. The ability to maintain discipline in a classroom is one of the professional qualifications of a teacher (emphasis added).
 No. 39775 reads in part:
 The Board *looks* to the professional staff to preserve the safety and protect the health and general welfare of individual students ... (emphasis added).
 No. 27600 reads in part:
 The educational welfare of each student *should* be the main concern of the instructional staff (emphasis added).

**7.** Both parties also included Board Policy No. 21050 in their briefs as a policy cited by the Board in its list of policies violated by appellant. Although a copy of Policy No. 21050 was included in the record, it was not enumerated in the Board's conclusions of law along with the above cited policies.

**8.** The Corporal Punishment Policy reads in part:

sion is supported by the testimony of Isaac Gardner, Jr., the District's Director of Student Services. He testified that appellant attended in-service meetings at which the District's policy on discipline and corporal punishment were discussed. Appellant himself testified that he learned of the District's policy at such meetings.

■ Appellant finally contends that even if his conduct did violate a published regulation it was not a willful or persistent violation to justify termination under § 168.114.1(4). Under the Teacher Tenure Act, either a single willful violation *or* persistent violations will warrant termination. "Willful" has been defined as "done deliberately or intentionally." Websters New World Dictionary. As discussed above, appellant was aware of the District's policy regarding corporal punishment. Therefore, given the evidence presented to the Board, we find that it was reasonable for the Board to conclude that appellant intended to act in violation of the District's discipline policies. A single act of disobedience to, or a violation of, a published regulation does not constitute persistent disregard thereof. *Carter,* 582 S.W.2d at 349. Nevertheless, based on the findings of fact issued by the Board, appellant did persistently violate the District's policy regarding corporal punishment. In *Shank, supra,* it was determined that the teacher's conduct in administering corporal punishment in a manner prohibited by regulation to five children on three different occasions over period of two years was both "willful" and "persistent." 542 S.W.2d at 782–83. For the aforementioned reasons, we find that the Board's decision on this Point was supported by competent and substantial evidence.

Appellant's Point IV is denied.

Affirmed.

(a) No corporal punishment shall be administered without the written consent of the parent or guardian.

. . . .

(c) Corporal punishment shall not in any case be administered in the presence of any other pupil.