DeWayne DUNCAN, Appellant,

v.

**REORGANIZED SCHOOL DISTRICT NO. R–1, BENTON COUNTY, et al.,** Respondents.

No. WD 31637.

Missouri Court of Appeals, Western District.

May 4, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1981.

Application to Transfer Denied July 14, 1981.

John W. Inglish, California, for appellant.

William F. Brown, Sedalia, for respondents.

Before DIXON, P.J., WASSERSTROM, C.J., and NUGENT, J.

WASSERSTROM, Chief Judge.

Plaintiff seeks a declaratory judgment that he is entitled to continued employment as an elementary school principal by the defendant School District. The trial court sustained defendants' motion for summary judgment and denied plaintiff's motion for judgment on the pleadings. Plaintiff appeals. We affirm.

In February 1979, plaintiff was a certificated teacher who had been employed by the defendant District as a principal for 15 years. On February 1, 1979, the Board of Education gave notice to plaintiff that he would not be reemployed as principal for the 1979–80 school year. Plaintiff promptly, on February 2, 1979, made a request for a statement of reasons. On February 9, the

Board acknowledged the request but stated that before providing reasons, it was waiting for legal clarification with respect to its obligation to do so. On February 16, 1979, the Board, while maintaining that it was not necessary for it to give its reasons, did in fact state the reasons for not reemploying plaintiff.[1]

On March 23, 1979, defendant filed his petition in the Circuit Court for declaratory judgment, in which he prayed the court to declare that the Board's attempt to terminate his contract was ineffectual and to further declare that plaintiff's contract as elementary principal continued in full force and effect for the school year 1979–80. Shortly thereafter, the Board sent plaintiff a second notice dated April 5, 1979, in which the Board again notified plaintiff that he had not been reemployed as principal. This notice, however, went on to state that plaintiff retained tenure as a teacher and that a position as a teacher was available to him for the school year 1979–80. Plaintiff took no action with respect to that part of the April 5 notice notifying him of non-reemployment as a principal, but he did submit to the Board a request for employment as a teacher, making clear at the same time that he still desired his administrative post as principal.

In ruling against plaintiff, the trial court held: (1) that Section 168.101[2] is applicable; (2) that the February notice was valid and effective, although the case should not turn upon that point; (3) that the April 5 notice was proper; (4) that plaintiff had not made any request for statement of reasons or any hearing after receipt of the April notice; and (5) that the demotion from principal to teacher had therefore become validly effective.

Plaintiff's points on this appeal can be summarized thus: (1) that the court erred in holding the February notice to have been effective; (2) that the court erred in holding the April notice to be effective; and (3) that summary judgment was improper because a question of fact remained with respect to the intention and understanding of the parties concerning the April notice. Inasmuch as we conclude that the February notice was effective to cut off plaintiff's right to reemployment, it becomes unnecessary to consider the effect of the April notice which is the subject of points 2 and 3. Discussion here is therefore confined to the first point on appeal, which relates to the effectiveness of the February notice.

■ The effectiveness of the February notice depends upon the statutory provisions contained in Chapter 168. Plaintiff in his petition raised the question as to whether Sections 168.104–168.116 (the Teacher Tenure Act) applies to plaintiff's situation or whether Section 168.101 controls. This question has been settled by *Williams v. Board of Ed., Cass R–VIII Sch. Dist.*, 573 S.W.2d 81 (Mo.App.1978), in which this court held that a school principal in a nonmetropolitan school district is not entitled to tenure qua principal, but rather that his rights as a principal are controlled by Section 168.101.[3]

Section 168.101.2 provides that after the original employment for certain positions which include a nonmetropolitan principal, the employment of such individual shall

---

1. The reasons given in the letter of February 16, 1979, were as follows:

    "1. The statement of deficiencies issued to you at the time of your contract renewal of January 11, 1978, has not been resolved to the satisfaction of the Board of Education, See copy of letter, which is attached.
    2. Continous [sic] chronic ineffiency [sic] in the line of duty as Principal.
    3. Not abiding with the established rules and regulations of the Board of Education of this school district, and in some instances, not complying with The Public School Laws of Missouri.

    4. Inadequate teachers evaluation.
    5. Unfair dealing with certified personnel.
    6. Making unauthorized expenditures."

2. All statutory references are to RSMo 1978.

3. As held in *Williams*, plaintiff does have tenure as a teacher. His right as a tenured teacher, however, is not in question in this case. The record shows that he was offered and accepted employment as a teacher for the school year 1979–80. The sole question in this case relates to what rights plaintiff has as a principal.

continue from year to year "subject to the regulations hereinafter set forth." Subsection 3 goes on to provide that such an employee shall be notified in writing on or before April 15 in each year concerning his reemployment and that "[f]ailure on the part of a board to give the notice constitutes reemployment on the same terms and in the same staff position as those provided in the contract of the current fiscal year." Subsection 6 further provides as follows:

"If such certificated employee has been reemployed five times within the district, the school board, if requested in writing by such certificated employee within ten days after receipt of notice of demotion or lack of reemployment on the same terms and in the same staff position shall make available in writing a statement of reasons for demotion or lack of reemployment within ten days after receipt of the request. The board shall grant such certificated employee a hearing if requested in writing by him within ten days after the receipt of statement of reasons, the hearing to be held within ten days after the request therefor, and to be open at the request of the certificated employee. The certificated employee may have counsel at the hearing, may testify and offer testimony of witnesses as well as other evidence sustaining his defense and may cross-examine adverse witnesses.

■ Plaintiff contends that in view of the foregoing statutory provisions and the fact that he had been employed for 15 years, he had a right to continued employment which constitutes a property right, and that right could be taken from him constitutionally only by procedural due process which was lacking in this case. This constitutional argument cannot be considered because it is raised for the first time on appeal. The law is well-settled that a constitutional argument must be raised at the earliest opportunity. *Christiansen v. Fulton State Hospital*, 536 S.W.2d 159 (Mo.

banc 1976). Since no constitutional point is mentioned in plaintiff's petition filed in the trial court, no such point is properly for consideration here.

■ Plaintiff also contends, however, that he is statutorily entitled to procedural protections which he says were not given. He further contends that if the Board did not strictly comply with the statutory procedures, then its attempt to terminate his contractual relationship was a nullity. He claims that the Board's procedure here was faulty in that it did not give an adequate statement of reasons and also because the furnishing of those reasons did not take place until 14 days after his request, rather than within ten days as required by Section 168.101.6. Plaintiff concludes that because of this faulty procedure, the February notice was ineffective and his contract as a principal renewed automatically under the terms of Section 168.101.3.

The fatal flaw in that line of argument lies in plaintiff's misconception that the statutory notice is effective only if a proper reason is given, followed thereafter by the holding of a proper hearing. The validity and effectiveness of the notice is not so dependent. Therefore the alleged lack of precision and delay in delivery of the February notice are immaterial here.[4]

In this regard, the structure of Section 168.101.6 stands in sharp contrast to that of Section 168.116.1. The latter section dealing with the rights of tenured teachers, states that "[t]he indefinite contract of a permanent teacher may not be terminated by the board of education *until after* service upon the teacher of written charges specifying with particularity the grounds alleged to exist for termination of such contract, notice of a hearing on charges and a hearing by the board of education on charges if requested by the teacher." [Emphasis added] Thus it is seen that a termination of a *tenured* teacher's contract cannot be accom-

---

4. Although we do not reach the question of whether the February notice was sufficiently definite in its specification of reasons, that issue has not been properly presented by plaintiff in this court, for the reason that the February notice refers to a statement of deficiencies set forth in a letter dated January 11, 1978, and which the Board attached to its notice. Plaintiff has omitted that attachment from the record on appeal.

plished under the specific wording of the statute until after reasons are given and a hearing has been held. Furthermore, Section 168.116.4 provides that if the decision to terminate a tenured teacher is appealed and the decision is reversed, "the teacher shall be paid his salary lost during the pending of the appeal." Still further, Section 168.120.4 provides that if the circuit court finds for the teacher, "he shall be restored to permanent teacher status and shall receive compensation for the period during which he may have been suspended from work. . . ."

No parallel provisions are contained in the statute for the benefit of an untenured nonmetropolitan principal. Section 168.101, according to its terms provides for a summary decision by the Board whether or not to reemploy the principal, and that decision becomes effective upon notice from the board to the principal. The provisions of subsection 6 for a statement of reasons and a hearing are simply post-determination and do not delay the effectiveness of the determination already made. This analysis of Section 168.101.6 was made in *Williams v. Board of Ed., Cass R–VIII Sch. Dist.*, *supra*, at p. 85 which holds that a principal entitled to the protections of that section "may be terminated by simple notice" and that the notice method there provided requires only that "the school authority shall merely inform the employee 'of demotion or lack of reemployment on the same terms and in the same position' in order to effectuate nonrenewal of employment."

The same analysis was made of a quite similar Connecticut statute in *Devlin v. Bennett*, 26 Conn.Sup. 102, 213 A.2d 725 (1965). In that case, a probationary teacher sought an injunction against termination of employment and an order requiring renewal of his contract. The Connecticut statute provided for the renewal of a *nontenured* teacher's contract unless the teacher was notified to the contrary in writing prior to March 1st; on request of the teacher the notice has to be supplemented within five days by a statement of reasons for termination; the teacher then had ten days thereafter within which to ask for a hearing;

and the hearing was required to be held within 15 days after the request. The Connecticut statute with respect to *tenured* teachers provided for renewal unless the contract was terminated for a cause specified by statute, and *prior to the termination* the board was required to give notice that termination was under consideration. The court held that the procedural provisions on behalf of the nontenured teachers were more than mere "statutory courtesy." Nevertheless, the court noted the marked distinction between the procedures provided for tenured teachers as compared to nontenured teachers. The court observed that the latter teachers were intended to get a measure of protection against arbitrary action, without impairing the right of the Board to reach its own judgment as to whether to renew or not to renew. The court then went on with the following very pertinent conclusions:

"This does not mean that a board of education has any burden to establish or prove any statutory reasons for its decision not to renew, or any obligation to withhold or defer such a decision until a hearing is held. Under the statute, it is clear that a board of education has a right to decide not to renew such a contract without a hearing. However, if a board does decide not to renew, it must notify the teacher concerned in writing before March 1 of the school year in which the contract is not to be renewed for the following year, and upon receipt of such notice the teacher may require a statement of the reason or reasons for not renewing his contract.

. . . [i]f he [the teacher] feels that the reason or reasons for the decision not to renew are improper, unreasonable, arbitrary, unjustified, incorrect or unfair, he may ask for a hearing. The fundamental purpose of the hearing is to give a probationary teacher who has already been acquainted with the reasons why a board of education has decided not to renew his contract a full and fair opportunity to persuade and convince the board that it is mistaken in that decision. . . ."

It follows that under subsection (a) of Sec. 10–151 a board of education has the statutory obligation to reconsider its decision not to renew a probationary teacher's contract in the light of all the information presented or disclosed at the hearing that may be relevant to such reconsideration...."

A similar analysis appears in *Stapleton v. Huff*, 50 N.M. 208, 173 P.2d 612 (1946), under a statute much more favorable to the teacher than Missouri Section 168.101.6. The New Mexico statute required notice of nonhiring for the ensuing school year with a specification of a date of hearing if a hearing was desired by the teacher. The statute further provided for right of appeal to a state board; and if the state board found that there was no sufficient cause of nonhiring, then the teacher was to be reemployed. The teacher in this case claimed an automatic renewal of his contract on the ground that the hearing held before the state board was not fair and legal. The trial court agreed that the state board hearing had not been fair, but denied the relief requested. The New Mexico Supreme Court affirmed, holding as follows:

"Appellant earnestly contends that the written contract which he held at the close of the 1944–45 school term was renewed by operation of law, for the reason that the notice and hearing required by the act are so inextricably inter-related and mutually dependent one upon the other, that the failure to afford appellant a hearing rendered the notice void and an absolute nullity in law. With this contention we do not agree.

If the legislature had intended that failure to afford the teacher a proper hearing should operate automatically to renew the contract of employment, as in the case of failure to serve notice of the local board's desire with reverence to continuance or discontinuance of the services of such teacher, it would have been a very simple matter to make known this intention by merely inserting the language 'or afford such hearing' after the phrase 'failure to serve such notice,' followed by the declaration that the omis-sion should be construed as a renewal of the contract of employment for the ensuing year. This it did not do and we should not perform the legislative function of supplying the omission.

The petition was entitled to a fair and legal hearing and to know all of the evidence upon which the State Board of Education based its findings and decision. The plain dictates of justice required it to disclose the facts it knew, if it intended to consider them, also to permit appellant to present his side of the case and to cross-examine witnesses testifying against him. If the hearing was conducted in the manner borne out by the record, then appellant was deprived of the right given him by the Act which prohibited his removal unless the alleged causes were substantiated by evidence at the hearing. [citing cases]

It is our opinion, and we so hold, that the failure of the State Board of Education to afford appellant a fair and legal hearing as required by the Act did not of itself renew his contract by operation of law. What the petitioner has been denied is the hearing before the State Board of Education to which he was entitled under the law...."

The foregoing analysis bears analogy to that reached by the Missouri Supreme Court in *Van Kirk v. Board of Police Com'rs, Etc.*, 586 S.W.2d 350 (Mo. banc 1979). In that case a police chief was removed by summary action of the Board of Police Commissioners. Thereafter, as required by statute, he was given a post-decision statement of reasons and a hearing. The court held that the removal was effective by the summary action of the Board and did not depend upon charge and proof at the hearing of good cause for removal. The court stated that the purpose of requiring the giving of reasons for the removal and a public hearing thereon was so that the police chief "may attempt to persuade the board that its decision is in error. It prevents his removal for an illegal reason [removal in violation of or in retribution for exercise of a constitutional right] and, per-

haps, informs the citizenry why a change was made in the leader of their police department."

To summarize, plaintiff had a right to receive from the Board a statement of their reasons for not rehiring him, and he had a further right to challenge those reasons at a hearing. But that is not what plaintiff wants. Indeed, he never asked the Board for a hearing and he does not ask for that now.[5] Instead, he asks for a declaration that the Board's February notice is a nullity, and he is insisting upon reinstatement on that simple procedural point. For the reasons hereinabove stated, he is not entitled to any such relief.

■ This opinion arrives at the same result as the trial court, but upon somewhat different reasoning. However, the judgment of the trial court is to be sustained if the result is correct, regardless of the reason given. *Lalumondier v. County Court of St. Francois*, 588 S.W.2d 197 (Mo.App.1979); *Kenilworth Ins. Co. v. Cole*, 587 S.W.2d 93 (Mo.App.1979).

The judgment is affirmed.

All concur.

---

[5] Had plaintiff requested a hearing and been refused by the Board, he would have been entitled to a court order mandating a hearing. If the court petition were filed with reasonable promptness, relief could have been made available so that a hearing and reconsideration could have been accomplished well before commencement of the 1979–80 school year. Plaintiff's failure to make timely request for a hearing makes it impossible now to do anything about the 1979–80 school year which of course has expired.

Although as already stated, we do not reach the question of whether the February notice was defective because four days late, nevertheless it is interesting to observe that such a defect could entitle plaintiff at best to nothing more than a new notice. The new notice by necessity would be even later in time than the February notice, which would strongly tend to the conclusion that the four day delay in that notice was inconsequential.