## ST. LOUIS COUNTY BOARD OF ELECTION COMMISSIONERS, Appellant,

v.

## The MISSOURI COMMISSION ON HUMAN RIGHTS, State of Missouri, ex rel. Doris Donaldson and The Missouri Commission on Human Rights, State of Missouri, ex rel. Rhoda C. Berkowski, Respondents.

No. 47164.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 20, 1984.

Russell J. Slater, St. Louis, for appellant.

Maureen E. Laflin, Asst. Atty. Gen., Jefferson City, for respondents.

REINHARD, Judge.

The St. Louis County Board of Election Commissioners, (Board), appeals from a judgment of the circuit court affirming an order of the Missouri Commission on Human Rights (Commission). On December 1, 1978, Rhoda Berkowski and Doris Donaldson were discharged from their respective positions as clerk typist and clerical supervisor with the Board. Both women filed separate complaints with the Commission. Each alleged the Board had discriminated against her by terminating her for absenteeism while failing to discipline male employees with similar or worse attendance records. After a consolidated hearing, the Commission determined that the Board had violated § 296.020, RSMo.1978, in that it sexually discriminated against the women by discharging them. The Commission awarded Ms. Donaldson $4,979.20 and

Ms. Berkowski $16,173.39 in back pay with Ms. Berkowski ordered reinstated to her position.

It is well established that we do not undertake to reexamine de novo evidence presented at administrative hearings. We must affirm the decision of the Commission unless its findings are not supported by competent and substantial evidence on the record; its decision is arbitrary, capricious or unreasonable; or unauthorized by law or any ground stated in § 536.140.2, RSMo.1978. *Guhl Midtown Eye Care Optical v. Missouri Commission on Human Rights*, 653 S.W.2d 699, 700 (Mo.App.1983). After carefully examining the entire record in the light of this scope of review, we have concluded the Commission's decision should be affirmed.

This case is governed by § 296.020.-1(1)(a), RSMo.1978, which provides that it is unlawful for an employer to discharge an individual because of the individual's sex. In order to establish a case of discriminatory discharge, plaintiff must first establish a prima facie case. The burden of production then shifts to the employer to rebut the plaintiff's contentions by articulation of some legitimate non-discriminatory reason for the discharge. Once the employer has met this burden, the plaintiff must then prove the articulated reasons offered by the defendant are pretextual. *R.T. French v. Springfield Mayor's Commission*, 650 S.W.2d 717, 722 (Mo.App.1983).

The necessary elements in a prima facie case are present when the plaintiff shows actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not such actions were based on a discriminatory criterion illegal under the act. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *Boner v. Board of Commissioners of Little Rock Municipal Waterworks*, 674 F.2d 693, 696 (8th Cir.1982).

After a hearing at which substantial testimony and exhibits were received into evidence, the Commission filed findings of fact and conclusions of law. It found that prior to Ms. Berkowski's discharge, she had worked at the Board for 14 years. She was initially hired as a clerk typist, but at the time of her discharge, she had progressed to the position of clerk typist III. Ms. Berkowski had no problems with productivity and performed her job with a positive attitude. She received no warnings concerning her attendance or work performance prior to her termination. Ms. Donaldson's employment history is similar. She worked nearly 9 years for the Board. At the time of her discharge, she was a clerical supervisor. No one had ever spoken to Ms. Donaldson concerning her work performance or attendance.

Sometime in late 1978, the Board determined to review the attendance record of its employees. For this purpose, Karen O'Brien, a clerical supervisor, prepared a chart showing all absences, excluding legal holidays, for each employee from May 1, 1977 to November 30, 1978 (nineteen months). Board employees accumulated thirteen sick days per year. Board employees with more than two and less than fifteen years seniority earned fifteen days of vacation per year. Employees who worked overtime were provided with compensatory time off (comp time). Any employee who desired "comp time" had to make a written request to his supervisor five working days prior to the date requested.[1] This was also true for vacation time. Vacation and "comp time" were coded on the chart prepared by Karen O'Brien as to the type of absence it was and whether it was charted or emergency. Charted absences were those requested over five days in advance. Emergency absences were those not requested five days in advance. Sick leave was not coded in this fashion.

From the chart, the Board found twenty seven employees with 50 or more absences

---

1. This was to assist in planning for the office, so the Board knew how many people to expect for work each day.

over this time period. From this chart, as well as other evidence in the record, the Commission prepared two charts showing the absentee record of thirteen employees of the Board as follows:

FIVE MALE EMPLOYEES

| | AUTHORIZED VACATION DAYS | VACATION DAYS TAKEN | AUTHORIZED SICK DAYS | SICK DAYS TAKEN | TOTAL DAYS ABSENT |
|---|---|---|---|---|---|
| DAGGETT | 23¾ | 28 | 20¾ | 28 | 54 |
| DANIEL | 23¾ | 47 | 20¾ | 23 | 85 |
| GARRY | 23¾ | 34 | 20¾ | 12 | 57 |
| HADDOCK | 23¾ | 32 | 20¾ | 18 | 77 |
| YOUNG | 23¾ | 13 | 20¾ | 26 | 54 |

EIGHT FEMALE EMPLOYEES

| | AUTHORIZED VACATION DAYS | VACATION DAYS TAKEN | AUTHORIZED SICK DAYS | SICK DAYS TAKEN | TOTAL DAYS ABSENT |
|---|---|---|---|---|---|
| BERKOWSKI | 23.96 | 42 | 20¾ | 21 | 85 |
| BRUNO | 23.96 | 36 | 20¾ | 22 | 72 |
| DONALDSON | 23.96 | 23 | 20¾ | 23 | 75 |
| ELDER (Barks) | 23.96 | 32 | 20¾ | 28 | 71 |
| FLACKS | 23.96 | 22 | 20¾ | 15 | 63 |
| GILLETTE | 12.63 | 14 | 20¾ | 20 | 55 |
| HOUSTON | 12.63 | 15 | 20¾ | 24 | 56 |
| SMITH | 22.14 | 22 | 20½ | 21 | 59 |

On December 1, 1978, the eight women above were disciplined. Ms. Berkowski and Ms. Donaldson along with two other women were discharged and four women were suspended. The five male employees were given warning letters for their attendance records, but were not disciplined in any other way.[2]

Ms. Donaldson received a letter from the Board, which stated, "that upon a review of your attendance record, you have become economically unemployable to this office, and therefore, your employment with the St. Louis County Board of Election Commissioners will be terminated as of Friday, December 1, 1978." The letter included her absentee record for the period of May, 1977 through November, 1978. It stated she had been absent "seventy-five (75) working days, including twenty three (23) days of sick leave and eleven (11) days absent without pay, excluding all legal holidays." Additionally, it was noted she had missed 10 Mondays and 6 Fridays. Ms. Berkowski's letter was identical in form. It stated she was economically unemployable due to her absence of 85 days in an 18 month period, including 21 sick days, 6

2. We note that in the letters to the eight women they were addressed using their last names and the letters were very formal. In the letters to the five men they were addressed by their first names and the letters were more informal.

absences without pay, 12 Mondays and 21 Friday absences.

The Commission found that many Board employees violated the absentee policy and that based upon the evidence the Board had enforced no absentee policy prior to December 1, 1978. The Commission, based upon these findings of fact, concluded that the two women made a prima facie case of sexual discrimination because only women employees were disciplined or discharged even though male employees had the same number or more absences. The Commission also found that the Board's articulated reason for the discharge was contained in the discharge letters. The Commission concluded:

> [B]ased upon the evidence ... there is no reasonable distinction between Complainant's and Daniel's absences that would make Complainant less economically employable than Daniel. It is concluded, therefore, that the total number of absences and sick leaves are pretextual with regard to respondent's articulated reason for the discharge.
>
> The conclusion based upon the evidence is that only females were subject to be disciplined by the Board. Since the violation of the males were the same as Complainant's ... it is concluded sex was a factor in the decision. Plaintiff has, therefore, proven by a preponderance of the evidence that Complainant's sex was a factor in her discharge.[3]

On appeal, defendant contends that the Commission's decision is not supported by competent and substantial evidence; it was arbitrary, capricious and unreasonable, and constituted an abuse of discretion. Defendant does concede that some of the male and females had similar numbers of absences. But from what we can glean from the argument portion of the brief, defendant apparently argues that its articulated reason for the discharge was not the total number of absences, but rather that the men had charted absences (had given no-

tice) while the women had taken emergency or uncharted absences.

There is no dispute that Ms. Donaldson and Ms. Berkowski had many more emergency absences than the men. However, there was no showing by defendant that this was a factor in the termination or discharge.

■ Once the plaintiff has made a prima facie case, the burden shifts to defendant to rebut the presumption by producing evidence plaintiff was discharged for a nondiscriminatory reason. The defendant meets this burden by introducing evidence which raises a genuine issue of fact as to whether it discriminated against the plaintiff. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To accomplish this, the defendant must clearly set forth through the introduction of admissible evidence, the reasons for the plaintiff's discharge. An articulation not admitted into evidence is insufficient. The defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

■ The only articulated reason advanced by the Board at the hearing for the women's discharge were the letters given to each of the two women. They referred to the total number of absences and the fact that the women were economically unemployable. They did not rely on the fact that their absences were without proper notice. Neither of the two directors testified as to the reasons for termination. There was no other competent testimony nor documents articulating a reason for termination. The closest the Board came to articulating the reason they assert now, on appeal, was the testimony of a clerical supervisor who had not participated in the decision to discipline the workers that she thought the lack of notice for absences was

---

**3.** This was for complainant Berkowski; a similar conclusion was reached for complainant Donaldson.

taken into account in determining whether to suspend or terminate the women. Under these circumstances, we have concluded that the Commission's findings are supported by competent and substantial evidence; its decision was not arbitrary, capricious or unreasonable; and was not unauthorized by law.

Affirmed.

KAROHL, P.J., and CRANDALL, J., concur.