Melvin FRANKLIN, Appellant,

v.

**BOARD OF DIRECTORS, SCHOOL DISTRICT OF KANSAS CITY, Missouri, Respondent.**

No. WD 41372.

Missouri Court of Appeals, Western District.

June 20, 1989.

Elister H. Dewberry, Kansas City, for appellant.

Allan V. Halliquist and Lori A. Leu of Blackwell Sanders Matheny Weary & Lombardi, Kansas City, for respondent.

Before BERREY, P.J., and
MANFORD and NUGENT, JJ.

MANFORD, Judge.

This action is premised on a decision by the Board of Directors of the School District of Kansas City, Missouri (hereinafter "Board") to demote Melvin Franklin (hereinafter "Franklin") from the position of principal to that of teacher. Franklin had been employed by the Kansas City School District as the principal at Central High School for six years. In April of 1987, the Board voted to approve the administration's recommendation to demote Franklin to a teacher position, and notified him of the decision. Upon his request, Franklin was given a statement of reasons for his demotion. Franklin also received a hearing before the Board pursuant to § 168.101(6), RSMo 1986. After a hearing, the Board sustained the demotion. The Board issued Findings of Facts, Conclusions of Law, and an Order as well as Rulings on Motions and Objections.

Franklin sought judicial review of the Board's decision. The circuit court, reviewing the record as a contested case, sustained the Board's decision. This appeal followed. The decision of the Board is affirmed.

Franklin formally raises nine points on appeal which are addressed specifically in this opinion. These points allege three basic reasons why this court should set aside the Board's decision to demote Franklin. These reasons are: (1) the trial court erred in reviewing the Board's decision as a contested case; (2) several of the Findings of Fact and Conclusions of Law are arbitrary and capricious and not supported by competent and substantial evidence upon the whole record; and (3) the Board failed to timely notify Franklin of its decision to

demote him and such failure constitutes reemployment as a principal.

The first issue on appeal is whether the decision of the Board to demote Franklin should be reviewed by the courts as a contested or noncontested case under the Administrative Procedure and Review provisions of Chapter 536, RSMo 1986. The distinction directly affects the scope of review.

A "contested case" has been defined by the Missouri Legislature as a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after a hearing. Section 536.010(2), RSMo 1986. Missouri courts have further refined this definition. The hearing requirement is the key to the classification and it must be found in a constitutional provision, statute, municipal charter or ordinance. *Travers v. Bd. of Tr. of Emp. Ret. Sys.*, 756 S.W.2d 623, 625 (Mo.App.1988), citing *State ex rel. Leggett v. Jensen*, 318 S.W.2d 353, 356 (Mo. banc 1958). Additionally, the element of adversity is essential to the meaning of "hearing" as it is used in § 536.010, *Housing Auth. of St. Louis v. Lovejoy*, 762 S.W.2d 843, 845 (Mo.App.1988), because in order for a "hearing" to qualify as a proceeding in a contested case, the hearing must be adversarial in nature, *St. Louis County v. State Tax Comm'n.*, 608 S.W.2d 413, 414 (Mo. banc 1980).

Conversely, the courts have construed the term "noncontested case" to mean an agency determination of the legal rights, duties or privileges of any person rendered without hearing before final decision. *Farmer's Bank of Antonia v. Kostman*, 577 S.W.2d 915, 921, n. 7 (Mo.App.1979), citing *State ex rel. Tax Comm'n. v. Walsh*, 315 S.W.2d 830, 834 (Mo. banc 1958).

A school principal in a nonmetropolitan school district, such as Franklin, is not entitled to tenure qua principal, but rather his rights as principal are governed by Section 168.101, RSMo 1986. *Duncan v. Reorganized School District No. R–1*, 617 S.W.2d 571, 572 (Mo.App.1981); *Williams v. Board of Ed., Cass R–VIII Sch. Dist.*, 573 S.W.2d 81 (Mo.App.1978).

Section 168.101, RSMo 1986, Subsection 3, provides that a school board shall notify each employee covered by § 168.101 in writing concerning his reemployment in his present staff position or lack thereof on or before April 15th in the year in which the contract then in force expires. Failure on the part of a board to give notice constitutes reemployment on the same terms and in the same staff position as those provided in the contract of the current fiscal year. Subsection 6 further provides:

> If such certificated employee has been reemployed five times within the district, the school board, if requested in writing by such certificated employee within ten days after receipt of notice of demotion or lack of reemployment on the same terms and in the same staff position, shall make available in writing a statement of reasons for demotion or lack of reemployment within ten days after receipt of the request. *The board shall grant such certificated employee a hearing if requested in writing by him within ten days after the receipt of statement of reasons*, the hearing to be held within ten days after the request therefor, and to be open at the request of the certificated employee. The certificated employee may have counsel at the hearing, may testify and offer testimony of witnesses as well as other evidence sustaining his defense and may cross-examine adverse witnesses. (Emphasis added.)

Franklin argues that the matters before the Board in a hearing conducted pursuant to § 168.101.6 constitute a noncontested case because the hearing is post-determinative, meaning conducted after the Board's decision or determination to demote has been made. In support of this argument, Franklin cites *Duncan v. Reorganized School Dist. No. R–1*, 617 S.W.2d 571 (Mo. App.1981).

*Duncan* does not address the issue of whether a § 168.101.6 hearing is a contested case before an agency. *Duncan* does, however, state that the terms of the statute provide for a summary decision by the

Board on whether to reemploy a principal, and that decision becomes effective upon notice from the Board to the principal. The *Duncan* court explained that the provisions of subsection 6 for a statement of reasons and a hearing are simply post-determinative and do not delay the effectiveness of the determination already made. *Duncan,* 617 S.W.2d at 574.

■ This court rejects Franklin's argument that this matter is a noncontested case. The argument ignores the key fact that a hearing before the Board is required by law, when timely requested by the certificated employee. Even though case law indicates that the demotion is effective immediately upon notice, the legislature has guaranteed the certificated employee a hearing before the agency, if requested within ten days. A requirement for a hearing on request can result in a contested case. *Randle v. Spradling,* 556 S.W.2d 10, 11 (Mo. banc 1977).

The element of adversity is present in a hearing conducted pursuant to § 168.101.6. The purpose of such a hearing is to give the certified employee an opportunity to offer evidence sustaining his defense to the reasons for lack of reemployment (see § 168.101.6, RSMo 1986), and an opportunity to persuade and convince the Board that it is mistaken in its decision. *Duncan,* 617 S.W.2d at 574. Moreover, the statute grants the certified employee the procedural right to counsel, the right to testify and offer testimony of witnesses as well as other evidence sustaining his defense, and the right to cross-examine adverse witnesses.

Additionally, Franklin and the Board approached the matter of his demotion as a contested case. Franklin took full advantage of the procedural rights afforded a party to a contested case in Chapter 536. Franklin was allowed discovery, including multiple depositions and requests to produce documents. The Board subpoenaed Franklin for deposition. He was afforded a full evidentiary hearing. Franklin does not now attack the adequacy of his opportunity to be heard by the Board. Franklin was represented by counsel and was able to call and cross-examine witnesses. The hearing was transcribed, exhibits were received, and Franklin submitted several legal briefs. Franklin requested and received written Findings of Fact, Conclusions of Law, and Rulings on Motions and Objections. The size of the record placed before the circuit court for review is one indicator of the extent and formality of the school board hearing. The hearing transcript is nearly 600 pages and is accompanied by another 500 or so pages of exhibits and legal briefs.

■ This court also rejects Franklin's argument that the case must be reviewed as an uncontested case because the hearing officer stated on the record that the case would be considered an uncontested case, even though the procedural process for contested cases would be followed. The classification of a contested case is left, not to the *ipse dixit* or invention of the agency, but as determined by law. *Missourians, For Sep. Of C. And S. v. Robertson,* 592 S.W.2d 825, 843 (Mo.App.1979).

■ For the above reasons, this court rejects Franklin's argument that the trial court erred in reviewing the agency decision as a contested case. This court holds that a hearing held before a board pursuant to § 168.101.6, RSMo 1986 shall be conducted as a contested case and reviewed as such by the courts. Franklin's first point is ruled against him.

■ On appeal from an agency decision in a contested case, an appellate court reviews the findings of fact and decision of the agency, not the judgment of the circuit court. *City of Cabool v. Missouri State Bd. of Mediation,* 689 S.W.2d 51, 53 (Mo. banc 1985). Judicial review of an administrative decision is limited to a determination of whether the decision is supported by competent and substantial evidence upon the whole record, whether it was arbitrary, capricious or unreasonable, and whether the administrative agency abused its discretion. § 536.140, RSMo 1986; *Hermel, Inc. v. State Tax Comm'n,* 564 S.W.2d 888, 894 (Mo. banc 1978). There is a strong presumption of validity in favor of a school

board's discretion in matters affecting school management and a reluctance by courts to interfere with such discretion. *Bell v. Bd. of Educ. of City of St. Louis,* 711 S.W.2d 950, 955 (Mo.App.1986); *Saunders v. Reorganized Sch. Dist. No. 2,* 520 S.W.2d 29, 35 (Mo.1975).

A court of appeals does not undertake to reexamine de novo the evidence presented at the administrative hearings. *St. Louis Co. Bd. v. Missouri Comm'n on Human Rights,* 668 S.W.2d 592, 594 (Mo. App.1984). Evidence should be considered in the light most favorable to the Board's decision, together with all reasonable inferences which support it. *Bell,* 711 S.W.2d at 955. Furthermore, the Court should defer to the Board's determination of witness credibility. *Id.* The fact-finding function rests with the administrative agency, and if the evidence would warrant either of two opposed findings, an appellate court must uphold the factual determinations the agency has made. *Osage Outdoor Advertising Inc. v. State Highway Comm'n,* 687 S.W.2d 566, 568 (Mo.App.1984). Furthermore, while the Court is not bound by the Board's decisions concerning questions of law, the Court should give due weight to the expertise and experience of the [Board] and its opportunity to observe the witnesses. *Fleming Foods of Missouri, Inc. v. Runyan,* 634 S.W.2d 183, 185 (Mo. banc 1982).

In a second point on appeal, Franklin contends that the Board erred in making Findings of Facts 5(a), (b), (c), and (d) because the findings are unsupported by competent and substantial evidence and are arbitrary, capricious, and unreasonable. The Board found as follows:

5. The Board of Directors finds that Melvin Franklin failed to perform satisfactorily in the area of educational program supervision and instructional leadership by:

(a) Failure to order Central's core teaching supplies for the opening of school until September 18, 1986. The supplies were core materials which teachers need to adapt lessons from the textbook to a student need level.

Such supplies were not received until the end of the first semester.

(b) Failure to have in place a master schedule providing for conflict-free assignment of students. As the result some teachers were unassigned and some teachers and students had double assignments.

(c) Failure to resolve conflicts in the master schedule by dealing with the schedule manually, the result of which was that a large number of students were not in class.

(d) Failure to timely resolve the problem of large classes due to poor student distribution.

Franklin's second point is taken up and, after review of the whole record, is found to be without merit and ruled against him because the findings are supported by competent and substantial evidence and are not arbitrary, capricious or unreasonable. The following evidence supports the findings.

Willie Giles, Jr., Acting Associate Superintendent for Secondary Schools, testified at the hearing. Giles wrote Franklin a memo regarding the timely processing of requisitions for the 1986–87 academic year. Giles had not received the majority of Franklin's requisitions procuring core teaching supplies until September 18, and was concerned that the necessary supplies were not available to teachers for the start of school. These supplies included curriculum-related materials needed by teachers to process and adapt lessons to student needs. Important core teaching supplies were not available at Central High until the end of the first semester.

Franklin explained the reasons for the late requisitions by indicating a concern for the safety of the supplies over the course of the summer. Giles did not accept the explanation because prior to the close of the school the previous year, all principals had been asked to identify a person to receive and provide a place of safekeeping for the supplies during the summer. Franklin had his assistant principal prepare the requisitions and the assistant told Giles that he had just forgotten to do it.

Giles testified that Central did not have a clear run master schedule. There had been a preliminary enrollment prior to the close of school in order to collect enrollment data from which a master schedule could be made. Central had an incomplete master schedule with many conflicts in the assignments of students and teachers. Some students were assigned twice and some teachers were unassigned or assigned twice to classes. Franklin had skills in scheduling, but had delegated the responsibility to his assistant principal.

Franklin acknowledged problems with the master schedule, but said the problems were caused by a cut in the number of teachers allocated to Central High and an increase in August in the number of students coming to Central High from another school.

Giles testified that as a result of poor master scheduling, a large number of young people were not in class and the master schedule was not developed to schedule a student and send him to class. Giles felt that this problem was not the result of an increased number of students being assigned to Central from another school. Regardless of the number of additional students, there simply was no master schedule to resolve conflicts. Additionally, a simple manual scheduling process was not being used. Another result of the lack of a master schedule was difficulty in distributing first semester grade cards due to problems in matching students to specific teachers and grades.

Giles wrote Franklin a memo dated September 19, 1986 regarding the problem of large classes due to poor student distribution. Giles testified, however, that this problem was to be addressed in the upcoming process of secondary reorganization in September to October. At that time, the pupil-to-teacher ratios were to be adjusted. Giles testified that a related concern was the large number of students who were not in classes due to scheduling problems. The record contains some conflict regarding the time for resolution of student distribution problems.

This court rejects Franklin's argument that the Board shifted the burden of proof by requiring that he establish the incredibility of witnesses testifying on behalf of the school district. Franklin's second point is ruled against him.

In a third point on appeal, Franklin contends that the Board erred in making the Findings of Fact 6(a) and (b) because the findings are unsupported by competent and substantial evidence and are arbitrary, capricious, and unreasonable. The Board found as follows:

6. The Board of Directors finds that Melvin Franklin failed to perform satisfactorily in the area of establishing and monitoring performance expectations by:

(a) Failure to develop observation schedules for teachers under his supervision and make notations for feedback to the teachers observed.

(b) Failure to provide his supervision (sic-supervisor) any evidence, as required, that he was making regular observations of teachers and assisting them in improving their instructional performance.

Franklin's third point is taken up and, after review of the whole record, is found to be without merit and ruled against him because the findings of fact are supported by competent and substantial evidence and are not arbitrary, capricious or unreasonable. The following evidence supports the findings.

Giles testified that he was responsible for evaluating the performance of Franklin as principal for three or four years. A main concern to Giles was the need for Franklin to spend more time observing classrooms. The school district had no administrative procedure defining the number of classroom visits required for a principal. However, in the 1984–85 academic year, Giles set as a formal "Job Target" the requirement that Franklin spend fifty percent of his time observing classrooms and interacting with teachers. Franklin failed to provide sufficient evidence that the target was being reached. Similar job targets were set for the 1985–86 academic year and

not satisfactorily completed. Franklin testified that he had job targets for the 1985–86 academic year, but received no feedback on them.

The administrative tribunal had before it the Principal Performance Evaluation of Franklin for the 1986–87 academic year. Although Franklin contests the manner by which Giles combined two evaluation timelines to complete the evaluation, there is no dispute that either timeline was appropriate. Giles reviewed the report with Franklin in a conference on March 16. Giles expressed concern with the amount of time Franklin spent observing classrooms, his lack of active participation in the staff and service program, and his lack of effort to collect data regarding teachers and student achievement. Based on visits to Central High and feedback from teachers, Giles felt that Franklin spent too much time in his office and not enough time actively involved in faculty observation and interaction. Franklin was rated as "unsatisfactory" and "needs improvement" in several areas.

A memo dated March 16 listed Franklin's job targets stemming from the principal evaluation. Included in the job targets was the requirement to develop and implement a classroom visitation and feedback schedule which shows at least fifty percent of Franklin's time in instructional observations and teacher interaction. Giles stated that all the job targets given in March were tasks that Giles had told Franklin needed to be done in the past.

Giles visited Central High on March 26 and did not receive from Franklin any evidence or documentation that the new job targets were being addressed. Giles set timelines for each target on March 30. Nine of the thirteen targets were to be addressed within about ten days.

Franklin's deposition testimony was that he was not personally involved in all teacher observations and conferences used for teacher evaluation records. A memo to all secondary school principals noted that timely completion of the 1986–87 evaluations may/will necessitate the use of the principal's administrative team. Franklin used his assistant principal and coordinator of instruction to complete many of the teacher observations, and placed his initials on the records.

After the new job targets were set in March, Giles testified that he never received a classroom observation schedule from Franklin. Franklin submitted a written rebuttal to his evaluation. Giles allowed Franklin the opportunity to submit materials to enable him to reconsider the 1986–87 evaluation, but did not receive sufficient supporting material. As for observation instruments, Giles saw some notes made by Franklin in a notebook, but said Franklin was unable to discuss the notes because he was not familiar with them. Franklin testified that he began to log his classroom visits after the new job targets were set, but was later told that a log was not what was desired.

An exhibit contained several classroom observation forms completed by Franklin. The exhibit reflects that in the first semester of the 1986–87 academic year, Franklin spent a total of 13 hours over the course of 10 days observing classrooms. In the second semester, the exhibit reveals 14 hours of observation made in 8 days. Franklin stated that the exhibit did not represent all formal and informal observations made by him throughout the school year.

Franklin testified that he met all the job targets given him in March by Giles. The only problem he had was the keeping of a log of classroom observations. Franklin testified that the job targets only required one item of documentation regarding an assembly schedule, and Franklin complied with that requirement.

Giles felt that Franklin did not sufficiently participate in the 1986–87 staff development sessions. Franklin was listed on the year schedule of sessions as a presenter only once. After one session, Giles expressed concerns to Franklin that were voiced by teachers about the lack of assistance offered to them by their principal.

The Board put into evidence the results of the 1986 Teacher Survey at Central High. Giles and Franklin discussed the

survey, especially those portions relating to principal performance. Almost half of the teachers in the survey responded that they did not find their principal helpful when they had a problem. Approximately the same percent did not agree with the statements that their principal had a reasonable understanding of the teacher's job and connected problems, and the principal provides teachers with instructional help when he visits their class(es).

The Board presented numerous rebuttals by teachers to their evaluations made by Franklin. Some teachers were concerned about Franklin's lack of personal observation in making the evaluations and the lack of feedback after observations were completed. Franklin's third point is ruled against him.

■ In a fourth point on appeal, Franklin contends that the Board erred in making the Findings of Fact 7(a), (b), and (c) because the findings are unsupported by competent and substantial evidence and are arbitrary, capricious and unreasonable. The Board found as follows:

7. The Board of Directors finds that Melvin Franklin failed to perform satisfactorily in the area of management and administration of his school by:
(a) Failure to put in writing his expectations for his administrative and security staff despite repeated requests to do so.
(b) Failure to develop a written hall supervision schedule despite repeated requests to do so.
(c) Failure to develop an overall building security plan that identified the roles of administrative staff, security guards and teachers.

Franklin's fourth point is taken up and, after review of the whole record, is found to be without merit and ruled against him because the findings are supported by competent and substantial evidence and are not arbitrary, capricious or unreasonable. The following evidence supports the findings.

Giles stated that Franklin failed to effectively utilize the staff he had to control the school. Giles testified that on several visits to Central he saw students loitering in the halls and heard students use profanity.

Giles testified that after observing the condition of Central High School, he provided the services of home-school coordinators to assist in observing and monitoring the halls and giving the students direction. This occurred after Giles discussed with Franklin the need to more effectively utilize his assistants in the building. Franklin did not feel that additional assistance was necessary.

Giles testified that behavior and discipline problems at Central were under better control just before school closed for the Christmas holiday because Franklin implemented a pre-holiday supervision schedule involving the teachers. Giles suggested that the schedule be continued and expanded during the second semester, but that was not done. Consequently, conditions deteriorated. Giles shared these observations with Franklin and made recommendations. Franklin did very little to follow up. Giles thought that the improvement in behavior and discipline problems was not sustained because Franklin had not continued the vigilance and set expectations with the security guards, assistant principals and teachers.

Giles testified about a January 14, 1987 memo written to Franklin regarding management of Central High. Giles explained that several times previously he had requested that Franklin put in writing his expectations for his administrative and security staff and teachers. Franklin had not done so after a period of almost two months. Giles spoke with Franklin about observations he made at the school, mentioned that Franklin was often not aware of what was happening with the management of the school, and made several recommendations.

Giles also testified that his memorandum of January 14 requested Franklin to put in writing a hall supervision schedule. Giles testified to a conference with Franklin on November 11, 1986 in which they discussed discipline problems in the halls and the lack of hall supervision. Franklin was to meet with assistant principals and make specific

assignments for building supervision and student control. Franklin was also to establish expectations for security guards and document their performance. Giles had not received any written material from Franklin two months after the conference and, thus, wrote the January 14th memo.

Giles asked Franklin several times to put a building supervision plan in writing. A job target given to Franklin on March 16, 1987 required him to develop and implement a building supervision plan that identified specific assignments for each security guard and assistant principal, and the role of teachers. Giles said he received no documentation or evidence that Franklin was making an effort to meet this job target.

In this fourth point on appeal, Franklin also contends that the Findings of Fact 7(a), (b) and (c) are contrary to the uncontradicted documentation and testimony on behalf of Franklin regarding his performance and compliance with the directives of his supervisor, Giles.

Although Franklin presented testimony and documentation regarding the development of written expectations, hall supervision schedules, and overall building security plans, the evidence is not uncontradicted. Franklin's evidence consisted of several documents, including administrative job descriptions listing building supervision procedures, memorandums to the assistant principals about building supervision and revised assignments, and a supervisory schedule to all staff which was dated March, 1987. Franklin testified that these documents were distributed to the administrative and security staff. Giles stated that he never received this documentation from Franklin in response to the job targets. Franklin testified that he met the job targets, and Giles testified that Franklin failed to meet the job targets.

Franklin's contention is rejected. If evidence before the administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for a contrary finding. *Prokopf v. Whaley*, 592 S.W.2d 819, 823 (Mo. banc 1980); *Bd. of Educ., Mt. Vernon Schools v. Shank*, 542 S.W.2d 779, 782 (Mo. banc 1976). Franklin's fourth point is ruled against him.

In a fifth point on appeal, Franklin contends that the Board erred in making the Findings of Fact 8(a) and (b) because the findings are unsupported by competent and substantial evidence. The Board found as follows:

8. The Board of Directors find that Melvin Franklin failed to perform satisfactorily in the area of setting and enforcing appropriate expectations for the behavior of students by:

(a) Failure to timely implement the District's Student Conduct Code.

(b) Lack of any observable controls over student behavior in the halls as evidenced by students often milling around, engaging in heavy petting in the halls and openly using profane language.

Franklin's fifth point is taken up and, after review of the whole record, is found to be without merit and ruled against him because the findings are supported by competent and substantial evidence. The following evidence supports the findings.

A Code of Student Conduct, published by the school district, was to be implemented in the fall of 1986. Exhibits showed that implementation was initially delayed to allow schools, such as Central, to identify alternatives to an in-school suspension room. Principals were directed to implement the code by October 1, although there was evidence of confusion regarding delay to identify alternatives to the in-school suspension room. A November 10 bulletin to secondary school principals indicated that implementation of the code was approved. Franklin did not implement the code at Central until December 10, 1986. Giles did not believe that Franklin submitted alternatives to the in-school suspension room for Central High.

Giles was concerned from his observations about the lack of impact Franklin had as principal when he walked through the halls of the school. Giles offered to work with Franklin and to walk with him to show

him how he managed the halls. Franklin did not take advantage of the offer. Giles did not believe that Franklin took advantage of similar opportunities to visit with principals from other high schools who were effective in hall management.

Exhibit 13 contained several memos written by Giles to Franklin. In one memo dated January 14, 1987, Giles writes about several observations at the school regarding the deteriorating condition of student behavior at Central. Giles wrote that students jumped over stairwells, four students engaged in heavy petting and touching in a hallway, several students loitered in the halls, there was a constant flow of students at the Coke machine, students played hide and seek on the fourth floor, a student urinated against the outside of the building, and students openly used profanity. In the memo, Giles quotes several profane statements made by students. Giles also testified to student behavior that he saw and heard during his visits to Central High.

On cross-examination, Giles testified to continuing problems with the bell and intercom system at Central and the repairs that were done. He stated that the observations he made about the condition of the halls took into consideration those times when he was aware that the bell was not functioning properly. He also acknowledged painting and construction in the school. Some stairwells were blocked off from student traffic, but Giles did not think that this caused students to be late for class.

Franklin believed that the bell and intercom problems caused students to be late for class at times. Franklin presented an exhibit of school rules distributed to students for their reference, but it must be noted that the rules distributed to students are not the same as the District Student Conduct Code referenced above.

■ Franklin argues that the January 14 memo written by Giles which documents student actions and statements is hearsay and cannot rise to the level of competent and substantial evidence to support Finding of Fact 8(b). This court finds no error by the administrative tribunal in the receipt of the January 14 memo or in

the Finding of Fact 8(b). The technical rules of evidence do not control an administrative hearing. *Bell v. Bd. of Educ. of City of St. Louis,* 711 S.W.2d at 956. Indeed, § 536.070(7) of the Administrative Procedure Act requires an administrative tribunal to receive proffered evidence into the record regardless of any evidentiary objections. *Id.* Thus, there was no error in receipt of the document.

■ Additionally, reception of hearsay evidence does not dictate a reversal of the agency decision unless there is not sufficient competent evidence to sustain the decision. *Giessow v. Litz,* 558 S.W.2d 742, 750 (Mo.App.1977); *McCallister v. Priest,* 422 S.W.2d 650, 659 (Mo. banc 1968). This court has reviewed the whole record and found substantial and competent evidence to support the finding of fact. The document objected to by Franklin is not the sole basis of the factual finding. Giles testified during the hearing to the student actions he personally observed while visiting the school and to the profane language he heard the students use in his presence. Giles did not quote the words used by the students, but characterized the words as profane. This competent and substantial evidence supports the finding.

Finally, there is doubt whether the evidence objected to qualifies as hearsay because it does not appear that the school district offered the document containing the profane statements as proof of the matters asserted therein. Franklin's fifth point is ruled against him.

In a sixth point on appeal, Franklin again contends that the Board erred in admitting into evidence the document describing student actions and statements, and in making a finding of fact based on hearsay contained in the document. Franklin's brief fails to develop the argument relating to this point relied on. This court addresses the point only to the extent of ruling against Franklin for the reasons set forth in the fifth point on appeal, which asserts the identical contention.

■ Franklin's seventh and eighth points allege that the Board erred in ruling that Franklin intentionally avoided service of notice of demotion because there is no

competent and substantial evidence to support the finding. The Board ruled as follows:

*FAILURE TO EFFECT TIMELY SERVICE OF NOTICE.* Numerous attempts were made by the District to serve Mr. Franklin with notice of non-reappointment as principal of Central Sr. High School for the 1987–1988 school year. Mr. Franklin had been a secondary principal for six (6) years and his experience in that position caused him to be knowledgeable of the date on which notices of non-reappointment were served to building administrators. Further, the Board finds and believes from all of the evidence that the numerous memoranda written to Mr. Franklin by Mr. Willie Giles, Associate Superintendent of Secondary Education, as well as Mr. Giles' comments to Mr. Franklin that he could not recommend him for continued employment as a principal caused Mr. Franklin to be aware that his demotion was eminent. The Board therefore believes that Mr. Franklin purposely absented himself from his duties and from the entire State of Missouri in order to avoid service of notice of non-reappointment. By Mr. Franklin's own testimony, he received notice of non-reappointment on April 16, 1987. Under these circumstances, the Board finds that such notice should be considered timely by analogy to cases where statutes of limitations are tolled despite delayed service. See *Kennon vs. Citizens Mutual Insurance Company,* 666 S.W.2d 782, 785–86 (Mo. App.1983) citing *Emanuel vs. Richards,* 426 S.W.2d 716, 719 (Mo.App.1968). The objection of untimely service is therefore overruled.

Franklin's seventh and eighth points on appeal are taken up and, after review of the whole record, are found to be without merit and ruled against him because the finding of the Board is supported by competent and substantial evidence. The following evidence supports the finding.

Franklin was an employee of the school district for twenty-one years, serving as teacher, counselor, assistant principal, and principal. He had been principal of Central High for six years.

Franklin was notified in mid-March through the 1986–87 Principal Evaluation and attached memo that his performance as principal was unsatisfactory and needed improvement. During the conference to discuss the evaluation, Giles told Franklin that he could not recommend him to continue as principal.

As to his whereabouts on April 15, 1987, Franklin testified that after leaving work on April 14 he was "not feeling too hot, and kind of worried a little bit about my son, so I—before the evening was over, I went to Chicago." Franklin said he took a day of sick leave on April 15 and returned to his home that evening around 11:00 p.m. Franklin submitted a copy of his airline ticket to Chicago. In earlier deposition testimony, Franklin stated that he now knows that notices of demotion are given on April 15th.

The Board voted to demote Franklin on April 14, 1987. The Personnel Supervisor, Walter Fordham, Jr., prepared the letter of demotion. One copy of the letter was sent to Franklin via regular mail on April 14, a second copy via certified mail on April 15, and a third given to Giles to hand deliver. Giles was unable to hand deliver the letter to Franklin on April 15 because Franklin was not at work that day. Fordham contacted a process server to serve the letter on Franklin.

"Buddy" Hatfield, a private process server, testified to his attempts on behalf of the school district to serve Franklin with the notice of demotion at his house on April 15. In his first attempt at approximately 5:30 p.m., Hatfield started to walk up the driveway of Franklin's house and saw three young men leaning against a car and talking to somebody in the garage. The person in the garage pulled the garage door down when he saw Hatfield. Hatfield inquired if the man in the garage was Franklin and the young men answered affirmatively. Hatfield knocked on the garage and house doors and received no response. Hatfield also asked the young men where they thought Franklin went and one responded that maybe he was in the bathroom. Hatfield described his second attempt to serve notice at the house at 8:15 p.m. as unsuccessful. He identified his

invoice and an affidavit of attempted service.

Franklin received a letter of demotion on April 16 and picked up another copy of the letter of demotion on or about April 21. Additionally, he found a teacher's contract when he returned to work on April 16.

On appeal, Franklin argues that Hatfield's testimony regarding statements allegedly made by unidentified young men at Franklin's residence is hearsay and cannot form the basis for a finding of fact. Although that particular evidence may be hearsay, Franklin's argument is rejected because the record contains sufficient non-hearsay evidence to support the Board's findings. *Bell v. Bd. of Educ. of City of St. Louis,* 711 S.W.2d at 956. The hearsay statements that Franklin was in the house or garage were not the basis of the Board's finding that Franklin absented himself that day from his duties and the state of Missouri.

Franklin also argues that Hatfield's affidavit of attempted service cannot form the basis of a finding of fact because it was not presented in compliance with § 536.070(12), RSMo 1986, the section of the Administrative Procedure and Review Act governing introduction of affidavits in contested case proceedings. This court rejects the argument. Although the statute was not strictly complied with, Franklin was not prejudiced as the affidavit was produced as a deposition exhibit several months prior to the hearing. Moreover, Hatfield testified at the hearing to the matters contained in the affidavit and was subject to cross-examination.

There is competent and sufficient evidence to support the Board's findings that Franklin's experience gave him knowledge of when notices of non-reappointment are served on building administrators, that his demotion was eminent, and that he purposely avoided service of notice. Franklin's seventh and eighth points are ruled against him.

■ In his ninth and final point on appeal, Franklin contends that the Board unlawfully ruled that the notice of demotion was given to Franklin in a timely manner. Missouri law provides that a school board shall notify certificated employees, such as Franklin, in writing concerning his reemployment in his present staff position or lack thereof on or before the fifteenth day of April. Section 168.101.3, RSMo 1986. The law further provides that failure on the part of a board to give the notice constitutes reemployment on the same terms and in the same staff position as those provided in the contract of the current fiscal year.

■ The administrative tribunal did not err in ruling that, under the circumstances in this case, the Board satisfied the statutory requirement of giving Franklin written notice of his demotion by April 15. The ruling, *supra,* specified that the notice should be considered timely by analogy to cases where the statutes of limitations are tolled despite delayed service. The cases cited in the ruling indicate that following the issuance of a summons, continued suspension of a limitations period is conditioned upon due diligence in obtaining service on the defendant. Whether due diligence is exercised is determined on a case-by-case basis, and valid considerations include the length of the delay, the length of the statute of limitations, available means of getting service on the defendant, prejudice from the delay, and other pertinent facts. *Kennon v. Citizens Mut. Ins. Co.,* 666 S.W.2d 782, 786 (Mo.App.1983).

This court will not disturb the ruling that the Board exercised due diligence in giving Franklin notice of his demotion and did so in a timely manner which satisfied the statutory requirement. The facts of the instant case establish that the Board voted on April 14, 1987 to demote Franklin. The Board made numerous attempts to use all available means to give Franklin written notice of the demotion, including the use of certified mail, regular mail, hand delivery, and attempted personal service by a process server. Franklin would have received the notice on April 15, but for his actions of absenting himself that day from his position as principal and from the state of Missouri. The delay in receipt of the notice was minimal because Franklin admits receiving the written notice the very next day, April 16. One purpose in imposing the April 15 deadline upon school boards in

§ 168.101.3 is to give certificated employees, who are employed on a year-to-year contract and ineligible for permanent status under the teacher tenure act, ample time to make key employment decisions for the upcoming year before the end of the current academic year or the expiration of their contracts. Franklin cannot show prejudice in the receipt of the notice of demotion on April 16 when his own actions of avoidance caused the one day delay. The actions and records of a school board, usually composed of laymen, are to be liberally construed instead of strictly and technically interpreted. If there was a substantial compliance with the statute, and no one was misled, that is all the law requires. *Meloy v. Reorganized School Dist., Etc.,* 631 S.W.2d 933, 937 (Mo.App.1982).

The decision of the Board of Directors of the School District of Kansas City, Missouri to demote Franklin from the position of principal at Central High School is affirmed.

All concur.